# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

### NO. 03-12-00255-CV

**King Street Patriots, Catherine Engelbrecht, Bryan Engelbrecht and Diane Josephs, Appellants**

**v.**

**Texas Democratic Party; Gilberto Hinojosa, Successor to Boyd Richie, in His Capacity as Chairman of the Texas Democratic Party; John Warren, in His Capacity as Democratic Nominee for Dallas County Clerk; and Ann Bennett, in her Capacity as the Democratic Nominee for Harris County Clerk, 55th Judicial District, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
### NO. D-1-GN-11-002363, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

## O P I N I O N

We withdraw our opinion issued on October 8, 2014, and substitute this one in its place. We overrule appellants' motion for rehearing.

This appeal is limited to facial challenges to the constitutionality of various Election Code provisions. *See* Tex. Elec. Code §§ 251.001, 253.003, 253.031, 253.037, 253.091, 253.094, 253.095, 253.101, 253.102, 253.103, 253.104, 253.131, 253.132, 273.081; Act of June 19, 1987, 70th Leg., R.S., ch. 899, § 1, 1987 Tex. Gen. Laws 2995, 3009 (former sections 253.062 and 253.097, repealed 2011). Facing cross-motions for summary judgment, the trial court ruled against appellants King Street Patriots (KSP), Catherine Engelbrecht, Bryan Engelbrecht, and Diane Josephs,

the parties facially challenging the constitutionality of the Election Code provisions. The trial court concluded that it did not have jurisdiction to consider some of appellants' constitutional challenges and, as to the remaining challenges, the trial court upheld the constitutionality of the Election Code provisions at issue. For the reasons that follow, we affirm the trial court's judgment.[1]

## BACKGROUND

The Texas Democratic Party, Boyd Richie,[2] in his capacity as Chairman of the Texas Democratic Party, John Warren, in his capacity as Democratic nominee for Dallas County Clerk, and Ann Bennett, in her capacity as the Democratic nominee for Harris County Clerk, 55th Judicial District (collectively "TDP"), brought suit against appellants seeking damages and injunctive relief based upon alleged Election Code violations. *See* Tex. Elec. Code §§ 253.131, 253.132, 273.081. Their allegations included that KSP made unlawful political contributions to the Texas Republican Party and its candidates (collectively "TRP") with regard to the 2010 general election by training poll watchers in coordination with the TRP and then offering the poll watchers' services only to the TRP. TDP also alleged that, based upon its political activities, KSP was "a sham domestic nonprofit corporation" and "an unregistered and illegal political committee." TDP asserted claims against KSP

---

[1] To the extent appellants assert as-applied constitutional challenges in the severed suit, we express no opinion as to the merits of those challenges. *See Combs v. STP Nuclear Operating Co.*, 239 S.W.3d 264, 272 (Tex. App.—Austin 2007, pet. denied) (noting that "party making an as-applied challenge need only show that the statute is unconstitutional because of the manner in which it was applied in a particular case" and that as-applied challenge is "fact specific"); *see also Catholic Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 426 (5th Cir. 2014) (noting that facial and as-applied challenges "have different substantive requirements" and comparing as-applied and facial constitutional challenges in context of challenges to Texas Election Code).

[2] Gilberto Hinojosa replaced Boyd Richie as the Chairman of the Texas Democratic Party following Hinojosa's election at the Texas Democratic Party State Convention.

2

for Election Code violations based upon KSP's status as a political committee and its status as a corporation.

Appellants answered and filed a counterclaim. They asserted that KSP was formed as a non-profit Texas corporation on December 30, 2009, to "provide education and awareness" to the "general public on important civic and patriotic duties." They stated that they "decided that a good way to participate was to help ensure that elections are free and fair" and that they "assisted anyone who was interested in this project in becoming a poll watcher." Their counterclaim sought declaratory relief challenging the constitutionality of Election Code provisions. Appellants claimed that the Election Code provisions at issue violated the First, Fourth, Eighth, and/or Fourteenth Amendments to the United States Constitution. *See* U.S. Const. amends. I, IV, VIII, XIV, § 1.

The parties entered into a rule 11 agreement to sever appellants' counterclaim challenging the facial constitutionality of the Election Code provisions into a separate cause number by agreed order and to abate the remaining claims until the new cause was resolved. Per that agreement, the trial court severed KSP's counterclaim into this cause and realigned the parties. The parties then filed cross-motions for summary judgment. *See* Tex. R. Civ. P. 166a.

In their motion for summary judgment, TDP urged that the applicable provisions of the Election Code were facially constitutional. *See* Tex. Elec. Code §§ 251.001, 253.031, 253.094, 253.104, 253.131, 253.132, 273.081. Among the grounds asserted to support summary judgment, TDP argued that sections 251.001, 253.094, and 253.131 had already been determined constitutional. To support this ground, TDP cited the opinions in *Ex parte Ellis*, 309 S.W.3d 71 (Tex. Crim. App.

3

2010), *Osterberg v. Peca*, 12 S.W.3d 31 (Tex. 2000), and *Castillo v. State*, 59 S.W.3d 357 (Tex. App.—Dallas 2001, pet. ref'd).

Appellants countered in their motion for summary judgment that the applicable Election Code provisions were facially unconstitutional. Among the grounds asserted to support summary judgment in their favor, appellants urged that: (i) the sections creating private rights of action for Election Code violations, *see* Tex. Elec. Code §§ 253.131, 253.132, 273.081, violated the First, Fourth, and Fourteenth Amendments; (ii) the sections prohibiting corporate contributions and expenditures, *see id*. §§ 253.091, .094, were unconstitutional under *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010), and violated the First and Fourteenth Amendments; (iii) the definitions of contributions and expenditures, *see* Tex. Elec. Code § 251.001(2)–(10), were unconstitutionally overbroad and vague; (iv) the definitions of political committees, *see id.* § 251.001(12), (14), were unconstitutionally overbroad and vague and violated the First Amendment; (v) the direct expenditure sections, *see id.* former §§ 253.062, .097, violated the First Amendment; (vi) the sections with "thirty and sixty day blackout periods," *see id*. §§ 253.031(c), .037(a), violated the First Amendment; and (vii) the sections providing criminal penalties, *see id*. §§ 253.003, .094, .101, .102, .103, .104, violated the Eighth Amendment.

Appellants did not offer summary judgment evidence to support their motion. TDP's evidence included affidavits, documents, and videos concerning KSP's recruitment and training of poll watchers.[3] The parties also stipulated to the following facts:

---

[3] TDP presented affidavits from the Chair of the Harris County Democratic Party, the Deputy Executive Director for the Texas Democratic Party, and Bennett. They testified regarding KSP's "assistance" and "support" of the TRP during the 2010 general election cycle and KSP's poll watcher

a. King Street Patriots, during and in advance of the 2010 General Election for State and County Officers, conducted, at its own expense, a training and recruitment program for poll watchers. Many of these KSP located and trained poll watchers were subsequently appointed to serve under Texas Election Code §§ 32.002–.003 by the Harris County Republican Party Chairman and/or Republican Nominees with regard to the 2010 General Election for State and County Officers.

b. Plaintiffs, the Texas Democratic Party, Boyd Richie, John Warren, and Ann Bennett, using the private right of action found in Tex. Elec. Code §§ 273.081, 253.131, and 253.132, intend to enforce Texas Election Code sections 251.001(2), (3), (4), (5), (6), (7), (8), (9), (10), (12), (14), 253.031(c), 253.037(a)(1) and (b), 253.062, 253.094, 253.097, and 253.104 against Defendants-Counterclaimants, King Street Patriots, Catherine Engelbrecht, Bryan Engelbrecht and Diane Josephs, based on alleged political speech the Defendants-Counterclaimants have engaged in, and intend to continue to engage in, in the future.

The trial court granted summary judgment against appellants and in favor of TDP. The trial court declared that Election Code sections 251.001(2), (3), (5), (6), (7), (8), (10), (12), and (14), 253.031, 253.037, 253.094, 253.104, 253.131, 253.132, and 273.081 and former sections 253.062 and 253.097 were facially constitutional. The trial court also concluded that it did not have jurisdiction to grant declaratory relief with respect to sections 251.001(4) and (9), the officeholder definitions, sections 253.031(c) and 253.037(a), the "blackout" periods, and the criminal penalties contained in

program. The Chair of the Harris County Democratic Party testified:

> The poll watchers recruited and trained by KSP for service in Harris County were all appointed by Republican nominees or the Harris County Republican Party. The KSP never offered to provide poll watchers for or on behalf of the Harris County Democratic Party. I attended at least one meeting at the Harris County Attorney General's Office at which the representative of the Harris County Republican Party discussed and acknowledged the coordinated efforts between the KSP and the Harris County Republican Party in connection with training and assigning poll watchers.

sections 253.094(c), 253.003(e), 253.101, 253.102, 253.103, and 253.104. The trial court concluded that it did not have jurisdiction with respect to those provisions because they were not at issue in the case. This appeal followed.

## ANALYSIS

Appellants bring six issues on appeal, primarily tracking the grounds raised in their motion for summary judgment. Appellants challenge the constitutionality of the sections of the Election Code that create a private right of action, the sections that allegedly "ban" corporate contributions and expenditures, the section defining various terms, the sections allegedly creating "blackout" periods, and the sections containing criminal penalties for violations of the Election Code. Appellants contend that the trial court erred by concluding that it did not have jurisdiction with respect to some of these challenged Election Code provisions and that it erred by declaring the remaining Election Code provisions facially constitutional.

### Standards of Review

We review a trial court's summary judgment rulings de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a traditional motion for summary judgment, the movant must show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). When, as is the case here, both parties move for summary judgment and the trial court grants one motion and denies the other, we review the summary-judgment evidence presented by both sides, determine all questions presented, and render

6

the judgment the trial court should have rendered. *Texas Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004).

We also review matters of statutory construction de novo. *See Texas Mun. Power Agency v. Public Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). Of primary concern in construing a statute is the express statutory language. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009); *Osterberg*, 12 S.W.3d at 38. "We thus construe the text according to its plain and common meaning unless a contrary intention is apparent from the context or unless such a construction leads to absurd results." *Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010) (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008)). We consider the entire act, not isolated portions. *20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008).

We also interpret statutes, if possible, in a way that makes them constitutional. *See City of Pasadena v. Smith*, 292 S.W.3d 14, 19 (Tex. 2009). "A statute is presumptively constitutional." *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 170 (Tex. 2004) (citing *Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 625 (Tex. 1996)); *see also* Tex. Gov't Code § 311.021(1).

**Declarations Addressing Constitutionality of Statutes**

Declaratory relief is available to resolve constitutional challenges to statutes. *See* Tex. Civ. Prac. & Rem. Code §§ 37.001–.011 ("UDJA"). The separation of powers article of the Texas Constitution, however, prohibits courts from issuing advisory opinions. Tex. Const. art. II, § 1; *see Brown v. Todd*, 53 S.W.3d 297, 302 (Tex. 2001) (advisory opinion decides "abstract questions of law

without binding the parties"). An advisory opinion addresses a "theoretical dispute," a dispute that does not involve "a real and substantial controversy involving a genuine conflict of tangible interests." *Texas Health Care Info. Council v. Seton Health Plan, Inc.*, 94 S.W.3d 841, 846 (Tex. App.—Austin 2002, pet. denied). Accordingly, the UDJA has been interpreted "to be merely a procedural device for deciding cases already within a court's jurisdiction rather than a legislative enlargement of a court's power, permitting the rendition of advisory opinions." *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993); *see also Texas Health Care Info. Council*, 94 S.W.3d at 846 ("A declaratory judgment action does not vest a court with the power to pass upon hypothetical or contingent situations, or to determine questions not then essential to the decision of an actual controversy, although such questions may in the future require adjudication."). As such, a party seeking declaratory relief must show that a requested declaration will resolve a live controversy between the parties. *See Texas Health Care Info. Council*, 94 S.W.3d at 846.

The constitutional challenges at issue here are limited to facial challenges. To sustain a facial challenge, a party generally "'must establish that the statute, by its terms, always operates unconstitutionally.'" *City of Corpus Christi v. Public Util. Comm'n of Tex.*, 51 S.W.3d 231, 240–41 (Tex. 2001) (citing *Barshop*, 925 S.W.2d at 627 (citing *Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 518 (Tex. 1995))); *see Combs v. STP Nuclear Operating Co.*, 239 S.W.3d 264, 272 (Tex. App.—Austin 2007, pet. denied) (comparing facial and as-applied constitutional challenges and noting that "[a] party seeking to invalidate a statute 'on its face' bears a heavy burden of showing that the statute is unconstitutional in all of its applications").

8

Among their constitutional challenges, appellants claim that the Election Code provisions at issue violate their free speech and associational rights under the First and Fourteenth Amendments. *See* U.S. Const. amends. I, XIV, § 1. In a facial challenge to a statute based on the First Amendment, even if the challenged statute is constitutional in some of its applications, a plaintiff may prevail by establishing "'that the statute lacks any plainly legitimate sweep.'" *Catholic Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 426 (5th Cir. 2014) (quoting *United States v. Stevens*, 559 U.S. 460, 472 (2010) (internal quotation marks and citation omitted)). "Plaintiffs may also invalidate a statute as overbroad if they demonstrate that 'a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Id.* (quoting *Stevens*, 559 U.S. at 473 (internal citations omitted)).

The United States Supreme Court has stated the importance of First Amendment rights in the electoral context on many occasions. In *Citizens United*, the Supreme Court explained:

> Speech is an essential mechanism of democracy, for it is the means to hold officials accountable to the people. . . . The right of citizens to inquire, to hear, to speak, and to use information to reach consensus is a precondition to enlightened self-government and a necessary means to protect it. The First Amendment "'has its fullest and most urgent application' to speech uttered during a campaign for political office." . . . For these reasons, political speech must prevail against laws that would suppress it, whether by design or inadvertence.

558 U.S. at 339–40 (internal citations omitted).

The Supreme Court, however, has applied differing standards in the electoral context depending on whether the statute at issue addresses political expenditures, contributions, or disclosure requirements. For example, when reviewing statutes governing corporate contributions and

9

disclosure requirements, the Supreme Court has articulated the test as whether the statute is closely drawn to match a sufficiently important governmental interest. *See Doe v. Reed*, 561 U.S. 186, 196 (2010) (noting that "exacting scrutiny" review applies when considering First Amendment challenges to disclosure requirements in the electoral context); *Citizens United*, 558 U.S. at 366–67 (noting that disclosure requirements are subject to "'exacting scrutiny,' which requires a 'substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest" (quoting *Buckley v. Valeo*, 424 U.S. 1, 64, 66 (1976))); *Federal Election Comm'n v. Beaumont*, 539 U.S. 146, 161 (2003) (noting that challenges to limits on corporate contributions pass constitutional muster if "'closely drawn' to match a 'sufficiently important interest'" (citation omitted)).

In contrast, when reviewing statutes governing corporate independent expenditures in the electoral context, the Supreme Court used a strict-scrutiny review. *See Citizens United*, 558 U.S. at 340 ("Laws that burden political speech are 'subject to strict scrutiny.'"). Strict-scrutiny review "requires the Government to prove that the restriction 'furthers a compelling interest and is narrowly tailored to achieve that interest.'" *Id.* (quoting *Federal Election Comm'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 464 (2007)); *Buckley*, 424 U.S. at 39 (noting that restrictions on political expenditures "limit political expression 'at the core of our electoral process and of the First Amendment freedoms'" (quoting *Williams v. Rhodes*, 393 U.S. 23, 32 (1968))); *see also McCutcheon v. Federal Election Comm'n*, 134 S.Ct. 1434, 1444–45 (2014) (plurality op.) (declining to revisit distinction in *Buckley* between contributions and expenditures and corollary distinction in applicable standards of review). Within this framework, we turn to appellants' issues.

**Private Right of Action**

In their first issue, appellants challenge the constitutionality of the sections creating a private right of action for Election Code violations. *See* Tex. Elec. Code §§ 253.131, 253.132, 273.081. Appellants contend that these provisions on their face violate the First Amendment, the Fourth Amendment, and the Due Process Clause of the Fourteenth Amendment. *See* U.S. Const. amends. I, IV, XIV, § 1. They assert that the provisions infringe upon speech and associational rights: that they "lack guidelines regarding what showing is necessary to initiate an investigation," "lack sufficient standards to protect discovery abuse," and have "enormous potential for abuse." They also urge that the injunction section, section 273.081, is an improper prior restraint on speech.

*a)* *Sections 253.131 and 253.132*

Section 253.131 creates a private right of action for opposing candidates, and section 253.132 creates a private right of action for political committees, to bring actions against a corporation or labor organization to recover statutory damages for violations of the Election Code. *See* Tex. Elec. Code §§ 253.131, .132. Sections 253.131 and 253.132 state:

§ 253.131. Liability to Candidates

(a)     A person who knowingly makes or accepts a campaign contribution or makes a campaign expenditure in violation of this chapter is liable for damages as provided by this section.

(b)     If the contribution or expenditure is in support of a candidate, each opposing candidate whose name appears on the ballot is entitled to recover damages under this section.

(c)     If the contribution or expenditure is in opposition to a candidate, the candidate is entitled to recover damages under this section.

11

(d)     In this section, "damages" means:

    (1)     twice the value of the unlawful contribution or expenditure; and

    (2)     reasonable attorney's fees incurred in the suit.

(e)     Reasonable attorney's fees incurred in the suit may be awarded to the defendant if judgment is rendered in the defendant's favor.

§ 253.132.  Liability to Political Committees

(a)     A corporation or labor organization that knowingly makes a campaign contribution to a political committee or a direct campaign expenditure in violation of Subchapter D is liable for damages as provided by this section to each political committee of opposing interest in the election in connection with which the contribution or expenditure is made.

(b)     In this section, "damages" means:

    (1)     twice the value of the unlawful contribution or expenditure; and

    (2)     reasonable attorney's fees incurred in the suit.

(c)     Reasonable attorney's fees incurred in the suit may be awarded to the defendant if judgment is rendered in the defendant's favor.

*Id*. §§ 253.131, .132.  Appellants focus on the lack of standards within the private-right-of-action sections regarding what showing is necessary to initiate investigation or discovery and what is discoverable, arguing that discoverable evidence must satisfy a heightened showing of relevance in the context of the First Amendment.

The trial court upheld the constitutionality of these sections based in part on the Texas Supreme Court's opinion in *Osterberg*.  In that opinion, the Texas Supreme Court faced a constitutional challenge to section 253.131 based on the First Amendment's free speech and associational rights.  12 S.W.3d at 48.  The supreme court held that the private right of action created

12

in section 253.131 was constitutional, reasoning that private enforcement advanced a "sufficient state interest":

> Section 253.131 is designed to "deter violators and encourage enforcement by candidates and others directly participating in the process, rather than placing the entire enforcement burden on the government." . . . Because state resources for policing election laws are necessarily limited, in many cases section 253.131 is likely to provide the only viable means of enforcing reporting requirements. Preventing evasion of these important campaign finance provisions is a legitimate and substantial state interest. . . . Furthermore, that the person enforcing the law and receiving damages can be a private party rather than the State does not mean that section 253.131 adds additional restrictions on First Amendment rights.

*Id*. at 49 (internal citations omitted). Although the court did not address section 253.132, the rationale for concluding that section 253.131 does not violate First Amendment rights applies equally to section 253.132.

Appellants urge that *Osterberg* does not control here. They distinguish the issue before this Court from the one addressed in *Osterberg* because, in that case, the challenge concerned *who* could recover damages and only one opposing candidate brought the suit. Appellants argue that the issue here is different because their focus is on the language in sections 253.131 and 253.132 that allows multiple parties to seek damages for the same Election Code violation. For example, they urge that multiple candidates may sue and recover damages when the challenged speech is about issues. However, the dispute here concerns alleged improper contributions by KSP to the TRP and its candidates, not issue advocacy by KSP. Declaratory relief is only available if the declaration will resolve a live controversy that binds the parties, *Texas Ass'n of Bus.*, 852 S.W.2d at 444, therefore, we decline to consider appellants' constitutional challenge based upon speech concerning issues.

13

Further, whether the statute is unconstitutional as-applied to a particular circumstance, such as multiple candidates suing to recover damages for the same speech about issues, is not the dispositive question before us, given that appellants' facial challenge requires them to prove the statute is unconstitutional in all circumstances or, in the First Amendment context, "that the statute lacks any plainly legitimate sweep." *See Reisman*, 764 F.3d at 426.

Appellants urge that the private-right-of-action sections do not provide necessary safeguards to avoid chilling the First Amendment fundamental right of privacy in association, "particularly where one must divulge such information to political opponents." In the context of as-applied challenges, courts have found that the constitution provides protection from disclosure of a person's identity in the context of associational rights if there is a "reasonable probability" that the disclosure will subject the person to "threats, harassment, or reprisals from either Government officials or private parties." *Citizens United*, 558 U.S. at 367; *Buckley*, 424 U.S. at 74; *In re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371, 376, 380–82 (Tex. 1998) (orig. proceeding). But appellants only bring a facial challenge to the statutes at issue. *See Citizens United*, 558 U.S. at 367 (acknowledging as-applied challenge may be available based upon showing that there was reasonable probability that disclosure would subject persons to threats, harassment, or reprisals). Appellants also did not offer summary judgment evidence that would support a finding that there is a "reasonable probability" that disclosure via discovery would subject them to "threats, harassment, or reprisals." *See id*. As such, precedent does not support appellants' argument that subjecting a person to suit and discovery under the Election Code facially violates First Amendment associational rights.

14

Appellants' arguments also focus on the lack of standards for discovery and initiating a suit within the private-right-of-action provisions to support their position that the provisions violate the Due Process Clause and the Fourth Amendment. *See* U.S. Const. amends. IV, XIV, § 1. They urge that the private-right-of-action provisions violate the Fourth Amendment because they do not require a showing of probable cause prior to allowing discovery. They contend that discovery initiated by a person acting under color of state law is a Fourth Amendment search and, therefore, that probable cause is required. Otherwise, they urge, the government could circumvent probable cause requirements by awaiting discovery in a civil proceeding. As to the Due Process Clause, appellants urge that the sections fail to provide the necessary "procedural safeguards" to prevent "'unbridled discretion' *via* discovery to seize constitutionally protected documents and communications, even if the private enforcers lose on their claims."

The Due Process guarantees, however, only provide protection against state action. *See Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 485 (1988); *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349 (1974); *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982) (noting that since 1883, "principle has become firmly embedded in our constitutional law that the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States" and that the Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrong").[4] Similarly, the Fourth Amendment protections generally only

---

[4] We also are not persuaded by the cases cited by appellants to support their position that the private-right-of-action provisions violate the Due Process Clause. Unlike the statutes at issue here, those cases involved laws that delegated legislative power to private citizens. *See, e.g.*, *Eubank v. City of Richmond*, 226 U.S. 137, 141–44 (1912); *General Elec. Co. v. New York Dep't of Labor*, 936 F.2d 1448, 1454–55 (2d Cir. 1991) (collecting similar cases). For example, an ordinance

apply to state action. *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 614 (1989). Although the Fourth Amendment provides protection against a search or seizure by a private party if the private party is acting as an instrument or agent of the government, there was no evidence that TDP was acting as an agent or instrument of the government here, *see id.*, and, even if there were such evidence, that would not satisfy appellants' burden to show that the statute is facially unconstitutional. *See City of Corpus Christi*, 51 S.W.3d at 240–41.

In any case, a private suit brought under the Election Code has procedural safeguards in place to protect defendants from unnecessary or overly intrusive discovery. Such suits are subject to the laws that apply to civil suits generally, such as the Texas Rules of Civil Procedure and the Texas Rules of Evidence. The Texas Rules of Civil Procedure provide guidelines for discovery and allow trial courts to limit discovery to protect confidential information. *See* Tex. R. Civ. P. 192.6. The rules, as well as statutes, also allow trial courts to award sanctions for discovery abuse and remedies for frivolous suits. *See, e.g.*, Tex. Civ. Prac. & Rem. Code §§ 10.001–.006; Tex. R. Civ. P. 13, 215. And sections 253.131 and 253.132 allow the recovery of attorney's fees for a successful defendant. *See* Tex. Elec. Code §§ 253.131(e), .132(c).

We conclude that the trial court did not err by granting summary judgment in favor of TDP with respect to sections 253.131 and 253.132 and by declaring those sections facially constitutional.

---

allowing boundaries to be fixed by a vote of two thirds of a particular group of property owners was found to be unconstitutional because it allowed a majority of private citizens to determine the rights of the minority without fixing a standard under which the decision was made. *Eubank*, 226 U.S. at 141–44.

*b)* *Section 273.081*

Section 273.081 states that "[a] person who is being harmed or is in danger of being harmed by a violation or threatened violation of this code is entitled to appropriate injunctive relief to prevent the violation from continuing or occurring." *Id.* § 273.081. Appellants argue that section 273.081 is "a prior restraint" on speech. *See Alexander v. United States*, 509 U.S. 544, 550 (1993); *Amalgamated Acme Affiliates, Inc. v. Minton*, 33 S.W.3d 387, 393 (Tex. App.—Austin 2000, no pet.). "A prior restraint is an administrative or judicial order forbidding certain communications when issued in advance of the time that such communications are to occur." *Minton*, 33 S.W.3d at 393. Appellants also argue that the section fails strict-scrutiny review and that it is not narrowly tailored to an important governmental interest. Appellants focus on the language in section 273.081 that allows injunctive relief to a "person," not just a political opponent, based upon "threatened" harm. Appellants argue that no compelling interest justifies enjoining political speech.

The plain language of section 273.081, however, does not support appellants' assertion that the section on its face violates the prohibition on prior restraints. *See Scott*, 309 S.W.3d at 930. The section applies to the entire Election Code, allowing injunctions in many different contexts. *See* Tex. Elec. Code § 273.081; *In re Gamble*, 71 S.W.3d 313, 318 (Tex. 2002) (orig. proceeding) (discussing injunctive relief provided by section 273.081 in context of violation of section 141.032 by party chair); *Cook v. Tom Brown Ministries*, No. 08-11-00367-CV, 2012 Tex. App. LEXIS 1318, at *43–45 (Tex. App.—El Paso Feb. 17, 2012, pet. denied) (mem. op.) (reversing trial court's denial of injunctive relief for Election Code violation and ordering city clerk to decertify and return recall petitions); *Ramirez v. Quintanilla*, Nos. 13-10-00449-CV, 13-10-00450-CV, 13-10-00454-CV,

2010 Tex. App. LEXIS 6861, at *43–44 (Tex. App.—Corpus Christi Aug. 20, 2010, pet. denied) (mem. op.) (affirming temporary injunction enjoining special election). The section also limits the scope of injunctive relief to "appropriate injunctive relief." Tex. Elec. Code § 273.081. And an order granting a temporary injunction is subject to interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code § 51.014(4). Given the scope and limits of the injunctive relief available under section 273.081, we conclude that this section is not facially unconstitutional or a "prior restraint" on speech. *See Minton*, 33 S.W.3d at 393.

We conclude that the trial court did not err by granting summary judgment in favor of TDP with respect to section 273.081 and by declaring the section facially constitutional. We overrule appellants' first issue.

**Corporate Contributions and Expenditures**

In their second issue, appellants argue that sections 253.091 and 253.094 are unconstitutional because they "ban" corporate contributions and expenditures. *See* Tex. Elec. Code §§ 253.091, .094. They argue that the corporate "ban" on contributions and expenditures fails strict-scrutiny review under *Citizens United*. As part of this issue, appellants also argue that the restrictions are content based and violate the equal protection clause and that speech restrictions that differentiate among speakers are subject to strict scrutiny. Content-based restrictions have been held to raise equal protection concerns "because, in the course of regulating speech, such restrictions differentiate between types of speech." *Burson v. Freeman*, 504 U.S. 191, 197 n.3 (1992). "Under either a free speech or equal protection theory, a content based regulation of political speech in a public forum is valid only if it can survive strict scrutiny." *Id*.

18

Section 253.091 sets forth the types of entities that are subject to subchapter D, the subchapter addressing corporations and labor organizations. Tex. Elec. Code § 253.091. The section includes non-profit corporations—such as KSP—as entities subject to subchapter D. *See id*. Prior to its amendment in 2011, section 253.094(a) limited corporate political contributions and expenditures to those expressly allowed in the subchapter. *See* Act of June 19, 1987, 1987 Tex. Gen. Laws at 3009. In 2011, section 253.094(a) was amended to delete corporate political expenditures. It now reads:

> A corporation or labor organization may not make a political contribution that is not authorized by this subchapter.

Tex. Elec. Code § 253.094(a). Section 253.094 was amended after the *Citizens United* opinion in which the Supreme Court held that the government may not prohibit corporate independent political expenditures. 558 U.S. at 365.[5]

At this stage of the parties' dispute, TDP's claim as to section 253.094 is not based on alleged political expenditures by KSP, but alleged contributions made by KSP.[6] As to the contribution limitations that section 253.094 places on the entities specified in section 253.091, appellants ask this Court to expand the holding in *Citizens United*. We decline to do so. The

[5] We disagree with appellants' contention that the trial court failed to address the expenditure component of former section 253.094. In the final summary judgment, the trial court expressly referenced the 2011 amendment to section 253.094 that removed expenditures.

[6] TDP's counsel confirmed at oral argument that TDP's claim for statutory damages based upon a violation of section 253.094 was limited to alleged political contributions made by KSP. *See* Tex. Elec. Code § 253.094. Their fourth amended original petition conforms with counsel's statements at oral argument.

19

Supreme Court in *Citizens United* continued to distinguish between expenditures and contributions and expressly stated that it was not reconsidering corporate contribution limits. 558 U.S. at 358–60; *see McCutcheon*, 134 S.Ct. at 1444–45 (discussing *Buckley* and reasons for distinguishing between political expenditures and contributions in context of First Amendment). Further, we are guided by the Supreme Court's analysis in *Beaumont* and the Texas Court of Criminal Appeals' analysis in *Ex parte Ellis*. In *Beaumont*, the Supreme Court rejected an as-applied challenge to corporate contribution limitations. 539 U.S. at 163. Upholding the constitutionality of the corporate contribution regulation at issue, the Supreme Court found that the regulation served compelling governmental interests, preventing "war chest" corruption and serving to prevent individuals from using the corporate form to circumvent contribution limits. *Id*. at 154–55. The Texas Court of Criminal Appeals in *Ex parte Ellis* concluded that the opinion in *Citizens United* did not have any effect on its jurisprudence relating to corporate contributions and upheld section 253.094 as facially constitutional, guided in part by the *Beaumont* opinion. 309 S.W.3d at 83–85, 92.

Appellants also urge that section 253.094 violates the equal protection clause because it bans contributions by corporations but not labor unions. But, as previously stated, section 253.094 also applies to labor organizations. *See* Tex. Elec. Code § 253.094. Guided by the directives in *Beaumont* and *Ex parte Ellis*, we conclude that the trial court did not err by granting summary judgment in favor of TDP with respect to appellants' constitutional challenges to the corporate contribution limitations and by declaring section 253.094 facially constitutional. We overrule appellants' second issue.

**Contribution and Expenditure Definitions**

In their third issue, appellants argue that the definitions of contribution, campaign contribution, officeholder contribution, political contribution, expenditure, campaign expenditure, direct campaign expenditure, officeholder expenditure, and political expenditure are unconstitutionally vague. *See* Tex. Elec. Code § 251.001(2)–(10).

A law is unconstitutionally vague if it fails to give those affected by it a reasonable opportunity to know what is required or when it is so indefinite that any enforcement is necessarily arbitrary or discriminatory. *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999); *Commission for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 437–38 (Tex. 1998). In the context of statutes that impose criminal penalties and impact First Amendment interests, "[c]lose examination of the specificity of [a] statutory limitation is required." *Buckley*, 424 U.S. at 40–41. "In such circumstances, vague laws may not only 'trap the innocent by not providing fair warning' or foster 'arbitrary and discriminatory application' but also operate to inhibit protected expression by inducing 'citizens to steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked.'" *Id*. at 41 n.48 (internal citation omitted). "Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *National Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415, 433 (1963).

Appellants focus on the words "direct" and "indirect" and the phrase "any other thing of value" in the definitions of contribution and the phrase "any other thing of value" in the definitions of expenditure to support their position that the general definitions are unconstitutionally vague. *See* Tex. Elec. Code § 251.001(2), (6). For purposes of this appeal, the Election Code defines a

contribution to mean "a direct or indirect transfer of money, goods, services, or any other thing of value" and an expenditure to mean "a payment of money or any other thing of value." *Id*. § 251.001(2), (6). Appellants also raise additional concerns with the definitions of the different types of contributions and expenditures. Focusing on the phrases "contribution," "political committee," "the intent," and "in connection with . . . a measure," they contend that the definition of campaign contribution is circular and vague. Section 251.001(3) defines a "campaign contribution" to mean "a contribution to a candidate or political committee that is offered or given with the intent that it be used in connection with a campaign for elective office or on a measure." *See id*. § 251.001(3). Appellants argue that "in connection with a campaign . . . on a measure" cannot be construed to exclude "general issue advocacy" and, therefore, is vague and unconstitutional.

Appellants make similar arguments as to the definition of an officeholder contribution. Section 251.001(4) defines an "officeholder contribution" to mean a "contribution to an officeholder or political committee that is offered or given with the intent that it be used to defray expenses that: (A) are incurred by the officeholder in performing a duty or engaging in an activity in connection with the office; and (B) are not reimbursable with public money." *See id*. § 251.001(4). Appellants make the same argument and address intent, as well as contending that the words "defray" and "in connection with" are vague. Finally, because a "political contribution" is defined as a "campaign contribution" or an "officeholder contribution," appellants urge that this definition is also vague for the reasons stated above. *See id*. § 251.001(5).

Turning to the definitions of different types of expenditures, the Election Code defines a "campaign expenditure" to mean "an expenditure made by any person in connection with a

campaign for an elective office or on a measure.  Whether an expenditure is made before, during, or after an election does not affect its status as a campaign expenditure." *Id*. § 251.001(7).  "A 'direct campaign expenditure' means a campaign expenditure that does not constitute a campaign contribution by the person making the expenditure." *Id*. § 251.001(8).  Appellants contend that the words "in connection with" are vague when considering their impact on political speech about a measure, especially because the definition includes political speech after an election.  Appellants further urge that the definitions include "general issue advocacy" and, therefore, are unconstitutional. Appellants make the same vagueness argument as to the definition of "officeholder expenditure" as they make as to the definition of "officeholder contribution." *See id.* § 251.001(9).  The definition of officeholder expenditure also includes the word "defray" and the phrase "in connection with." Finally, appellants urge that the definition of political expenditure is vague because it uses the terms "campaign expenditure" and "officeholder expenditure." *See id*. § 251.001(10).

As an initial matter, the trial court concluded that it did not have jurisdiction to consider the challenged officeholder definitions. *See id*. § 251.001(4), (9).  We agree.  Because the officeholder definitions were not at issue between these parties, any declaratory relief as to their constitutionality would be advisory.  *See Todd*, 53 S.W.3d at 302 (noting that courts do not have jurisdiction to render advisory opinions).  For the same reason, we decline to address appellants' arguments addressing the word "measure" in the various definitions.  *See id.*  The parties' dispute concerns KSP's activities in connection with campaigns for elective office, not their activities in connection with a measure.  *See id*.

23

Appellants' remaining arguments challenging the definitions are controlled by the analysis and reasoning in *Ex parte Ellis*. In the context of alleged improper corporate contributions and a criminal prosecution, the Texas Court of Criminal Appeals considered vagueness and overbreadth challenges to the contribution definitions and found the definitions to be facially constitutional. *See* 309 S.W.3d at 82–92. The *Ellis* court found that the definitions were "sufficiently clear to afford a person of ordinary intelligence a reasonable opportunity to know what [was] prohibited" and that the definitions provided appropriate guidelines for enforcement. *Id*. Although the *Ellis* court did not address the expenditure definitions, the same rationale for concluding that the contribution definitions are facially constitutional applies to the expenditure definitions. Following the *Ellis* court's analysis, we conclude that appellants failed to establish that the definitions at issue are facially unconstitutional and that the trial court did not err in its summary judgment rulings as to these definitions. We overrule appellants' third issue.[7]

---

[7] On rehearing, appellants focus on the overbreadth doctrine. To the extent appellants challenge the definitions based upon this doctrine, we also reject that challenge. "An overbroad statute 'sweeps within its scope a wide range of both protected and non-protected expressive activity.'" *Commission for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 435 (Tex. 1998) (citation omitted). "To vindicate First Amendment interests and prevent a chilling effect on the exercise of First Amendment freedoms, the overbreadth doctrine allows a statute to be invalidated on its face even if it has legitimate application, and even if the parties before the court have suffered no constitutional violation." *Ex parte Ellis*, 309 S.W.3d 71, 90–91 (Tex. Crim. App. 2010) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)). "The overbreadth doctrine is 'strong medicine' that should be employed 'sparingly' and 'only as a last resort.'" *Id*. (quoting *Broadrick*, 413 U.S. at 613). "'[T]he overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.'" *Id*. (quoting *Broadrick*, 413 U.S. at 615). "Only if the statute 'reaches a substantial amount of constitutionally protected conduct' may it be struck down for overbreadth." *Benton*, 980 S.W.2d at 436 (quoting *City of Houston v. Hill*, 482 U.S. 451, 458 (1987)). On this record, we decline to strike down the challenged definitions as facially unconstitutional based on the overbreadth doctrine. *See id*.; *see also Clements v. Fashing*, 457 U.S. 957, 972 n.6 (1982) (overbreadth exception to traditional requirement of standing may not

24

**Political Committee Definitions**

In their fourth issue, appellants contend that the definitions of political committee, specific-purpose committee, general-purpose committee, and the now-repealed direct expenditure sections are facially unconstitutional because they violate the First Amendment and are unconstitutionally vague. *See* Tex. Elec. Code §§ 251.001(12), (13), (14), 253.062, 253.097; Act of June 19, 1987, 1987 Tex. Gen. Laws at 3009.

### a) Political Committee Definitions

The Election Code defines a political committee to mean "a group of persons that has as a principal purpose accepting political contributions or making political expenditures." Tex. Elec. Code § 251.001(12). A specific-purpose political committee supports or opposes identified candidates or measures, *id*. § 251.001(13), and a general-purpose political committee "has among its principal purposes . . . supporting or opposing" two or more unidentified candidates or one or more unidentified measures or "assisting two or more officeholders who are unidentified." *Id*. § 251.001(14). Appellants focus on the phrases "supporting or opposing" and "assisting two or more officeholders" and the inclusion of "unidentified" measures, candidates, and officeholders and "unknown" offices in the general-purpose committee definition. *See id.*

Appellants argue that strict scrutiny applies, but that, even if exacting scrutiny applies, the statutes are facially unconstitutional. Appellants focus on the analysis by the Supreme Court in *Citizens United* and *Buckley* concerning regulation of political committees. The Supreme Court in

apply where First Amendment rights may be litigated on a case by case basis).

*Citizens United* observed that political committee status is "burdensome," "onerous," "expensive to administer and subject to extensive regulation." *See* 558 U.S. at 337. In *Buckley*, the Supreme Court construed the federal definition of "political committee" to encompass only organizations "under the control of a candidate[s]" or organizations with the "major purpose" to nominate or elect candidates. 424 U.S. at 79; *see Federal Election Comm'n v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238, 253 n.6 (1986).

Appellants argue that because the definitions of political committee in the Election Code do not have a "major purpose" or "under the control of a candidate" test that they are facially unconstitutional. Appellants urge that allowing an organization to speak only if it becomes a political committee equates with banning the organization's speech when the organization decides that the speech is "simply not worth it." *See Massachusetts Citizens for Life, Inc.*, 479 U.S. at 255. They also urge that the political committee definitions are unconstitutional because they have a zero-dollar threshold and that they are unconstitutionally vague because "[a] speaker cannot know when it has this 'principal purpose.'" They urge that the definitions do not provide fair warning and subject speakers to "arbitrary and discriminatory application," thereby chilling speech. *See Buckley*, 424 U.S. at 41 n.48.

Mindful that appellants' challenge to the definitions is a facial challenge, we cannot conclude that these definitions violate the First Amendment, that they are unconstitutionally vague, or that they lack any plainly legitimate sweep. *See Morales*, 527 U.S. at 52; *Reisman*, 764 F.3d at 426; *compare Massachusetts Citizens for Life, Inc.*, 479 U.S. at 263–65 (holding that federal statute prohibiting corporate expenditures "as applied" to newsletter by nonprofit, nonstock corporation

26

formed to promote "pro life" causes was unconstitutional as a violation of First Amendment). The plain language of section 251.001(12) limits "political committee" status to groups with "a principal purpose of accepting political contributions or making political expenditures." The Election Code does not define the words "principal purpose" so we apply their common meaning. "Purpose" means "[t]he object toward which one strives or for which something exists; goal; aim." *American Heritage Dictionary of the English Language* 1062 (1973). "Principal" means "[f]irst, highest, or foremost in importance, rank, worth, or degree; chief." *Id*. at 1041. Applying the phrase's common meaning limits the reach of the definition, and the definition also expressly encompasses the definitions of political contributions and expenditures, further defining and narrowing the classification. *See* Tex. Elec. Code § 251.001(5), (10). The definitions of specific-purpose and general-purpose also distinguish between and narrow the different types of political committees on the basis of whether the measure or candidates at issue are identified and known or unidentified and unknown.

Viewing the definitions as a whole and in context with each other, they are "sufficiently clear to afford a person of ordinary intelligence a reasonable opportunity to know what [was] prohibited" and provide appropriate guidelines for enforcement. *See Ex parte Ellis*, 309 S.W.3d at 82–92*; see also Buckley*, 424 U.S. at 41 n.48; *Parker*, 249 S.W.3d at 396. We therefore conclude that the challenged definitions are not unconstitutionally vague or facially unconstitutional under the First Amendment.

### b) *Former Sections Addressing Direct Expenditures*

As part of their fourth issue, appellants argue that the direct expenditure requirements contained in former sections 253.062 and 253.097 are unconstitutional because they force political

committee burdens on individuals. *See* Act of June 19, 1987, 1987 Tex. Gen. Laws at 3009. Former section 253.062 required an individual to comply with reporting requirements when the individual made a direct campaign expenditure exceeding $100, and former section 253.097 required a corporation or labor organization to comply with former section 253.062 as an individual when the corporation or labor organization made direct expenditures in connection with an election on a measure. *See id*. As previously stated above, the parties' dispute concerns KSP's activities in connection with campaigns for elective office, not its activities in connection with a measure, and TDP's claim concerns alleged contributions by KSP, not expenditures. *See id*. We therefore decline to address appellants' arguments addressing these two sections. *See Todd*, 53 S.W.3d at 302. We overrule appellants' fourth issue.

**30 and 60 day periods**

In their fifth issue, appellants argue that the 30 and 60 day "blackout" periods in sections 253.031 and 253.037 are unconstitutional. *See* Tex. Elec. Code §§ 253.031(c), .037(a). Section 253.031(c) prohibits a political committee from making a campaign contribution or expenditure supporting or opposing specified candidates unless its campaign treasurer appointment has been on file for at least 30 days. *Id*. § 253.031(c). Section 253.037(a) prohibits a general-purpose committee from making a political contribution or expenditure unless its campaign treasurer appointment has been on file for at least 60 days and it has accepted political contributions from at least 10 persons. *Id*. § 253.037(a). Appellants argue that the State does not have an interest in prohibiting speech for a period of time after a group is formed or in prohibiting expenditures and contributions by groups of fewer than 10 people. They contend that the 10-person minimum is

28

unconstitutional because the government has no interest in ensuring that political speech has a base of support and violates the right of association of any group of persons smaller than 10 persons.

The trial court concluded that it did not have jurisdiction to grant declaratory relief with respect to these provisions because they were not at issue in this case and, therefore, any relief would be advisory. *See Todd*, 53 S.W.3d at 305. Appellants argue that the trial court's conclusion that it did not have jurisdiction was in error because appellants must abide by the deadlines in these provisions to engage in political speech. The parties also stipulated that TDP "intended to enforce" sections 253.031(c) and 253.037(a) against appellants. TDP's petition, however, does not raise section 253.037, and limits the alleged violation of section 253.031 to the failure to appoint a campaign treasurer at all. We therefore agree with the trial court that it did not have jurisdiction to consider appellants' constitutional challenges to these provisions. On this basis, we overrule appellants' fifth issue.

**Criminal Penalties**

In their sixth issue, appellants argue that the criminal penalties in the Election Code violate the Eighth Amendment. *See* Tex. Elec. Code §§ 253.003(e), 253.094(c), 253.095, 253.101(b), 253.102(c), 253.103(c), 253.104(c). The specified offenses under the Election Code are third-degree felonies and subject to punishment by imprisonment "not more than 10 years or less then 2 years." Tex. Penal Code § 12.34. In addition to imprisonment, a corporate officer "may be punished by a fine not to exceed $10,000." *Id*. The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

The trial court did not address appellants' constitutional challenges to the criminal penalties in the Election Code because it concluded that it did not have jurisdiction to do so. In its order, the trial court reasoned that the State is not a party and that TDP was not entitled to seek criminal penalties and, therefore, that any ruling would be an improper advisory opinion. *See Todd*, 53 S.W.3d at 305. We agree and, on this basis, overrule appellants' sixth issue.

## CONCLUSION

Having overruled appellants' issues, we affirm the trial court's final summary judgment.

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Affirmed on Motion for Rehearing

Filed: December 8, 2014