# IN THE SUPREME COURT OF TEXAS

════════════

No. 15-0320

════════════

KING STREET PATRIOTS, CATHERINE ENGELBRECHT, BRYAN ENGELBRECHT, AND
DIANE JOSEPHS, PETITIONERS,

v.

TEXAS DEMOCRATIC PARTY; GILBERTO HINOJOSA, SUCCESSOR TO BOYD RICHIE,
IN HIS CAPACITY AS CHAIRMAN OF THE TEXAS DEMOCRATIC PARTY; JOHN
WARREN, IN HIS CAPACITY AS DEMOCRATIC NOMINEE FOR DALLAS COUNTY
CLERK; AND ANN BENNETT, IN HER CAPACITY AS THE DEMOCRATIC NOMINEE
FOR HARRIS COUNTY CLERK, RESPONDENTS

══════════════════════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

══════════════════════════════════════════════════════════════

**Argued February 7, 2017**

JUSTICE GUZMAN delivered the opinion of the Court.

JUSTICE DEVINE filed a concurring opinion.

*The liberty of the electors in the exercise of the right vested in them by the Constitution to choose public officers on whatever principle or dictated by whatever motive they see fit . . . cannot be denied.*[1]

───────────────

[1] *Gilmore v. Waples*, 188 S.W. 1037, 1039 (Tex. 1916).

Political liberty is the bedrock of our democracy, and the right of citizens to choose their public officials and political associations is deeply rooted in our constitutional firmament. The vast breadth of the freedoms "We the People"[2] enjoy moved Alexis de Tocqueville to write "[t]here is only one country on the face of the earth where the citizens enjoy unlimited freedom of association for political purposes."[3] But while the United States Constitution robustly protects the right of electors to choose their representatives, "[t]he States possess a broad power to prescribe the 'Times, Places and Manner of holding Elections for Senators and Representatives,' . . . [and] state offices."[4] Though broad, the State's power to prescribe laws regulating elections is constitutionally constrained and is therefore subject to limits established by the First Amendment, including the freedom of political association granted to our citizens.[5] This case, which involves a constitutional challenge to the Texas Election Code, highlights the tension between the warp and weft of these rights and powers in our constitutional fabric.

---

[2] U.S. CONST. pmbl.

[3] 2 ALEXIS DE TOCQUEVILLE, DEMOCRACY IN AMERICA 140 (Francis Bowen ed., Henry Reeve trans., Sever & Francis 4th ed. 1864) (1835).

[4] *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 451 (2008) (citing U.S. CONST. art. I, § 4, cl. 1).

[5] *Id.*

The Texas Democratic Party[6] sued King Street Patriots,[7] alleging noncompliance with obligations and restraints the Election Code imposes on "political committees" and corporations. King Street Patriots is a self-described "group of concerned residents from the Houston area" who "engage[d] in the political process" by forming a Texas nonprofit corporation to "provide education and awareness [to] the general public on important civic and patriotic duties." The Texas Democratic Party claims King Street Patriots is a "political committee" that unlawfully accepts "political contributions" and makes "political expenditures" as those terms are defined in the Election Code. King Street Patriots firmly denies being a "political committee" or violating any applicable law. But to the extent it is subject to regulation under the Election Code, King Street Patriots contends certain statutory provisions impermissibly burden its constitutional rights, including the right of political association. In the trial court, the parties took the unusual step of obtaining an agreed order (1) deferring resolution of the Texas Democratic Party's claims and King Street Patriots's as-applied constitutional challenges and (2) severing King Street Patriots's facial challenges to the Election Code for expedited adjudication.[8] The former remain pending in the trial court, while the latter are the subject of this appeal.

---

[6] Joining as plaintiffs were Boyd L. Richie in his capacity as chairman of the Texas Democratic Party, and two Democratic Party candidates in the 2010 general election, John Warren for Dallas County Clerk and Ann Bennett for Harris County Clerk. We refer to plaintiffs collectively as the "Texas Democratic Party."

[7] We refer to King Street Patriots, Inc. and the individual defendants associated with the non-profit corporation—Catherine Engelbrecht, Bryan Engelbrecht, and Diane Josephs—collectively as the "King Street Patriots."

[8] Separate and apart from the facial challenges King Street Patriots asserted as counterclaims, King Street Patriots asserted as-applied constitutional challenges as defenses to enforcement in its Original Answer.

3

Following severance, the trial court found the challenged Election Code provisions facially valid, and the court of appeals affirmed.[9] Here, though the issues are more narrow in scope, King Street Patriots continues to assail the constitutionality of Code provisions that (1) restrict corporate contributions, (2) grant a private right of action, and (3) define political committees, campaign contributions, and political contributions. As to the last of these, the Texas Solicitor General, weighing in on the matter at our request, argues that if we properly construe the term "political committee," no constitutional infirmity exists and King Street Patriots does not fall within its ambit because it is not a "political committee."

Adhering to the United States Supreme Court's decision in *Federal Election Commission v. Beaumont*,[10] as we are obliged to do,[11] we conclude that legislatively enacted bans on corporate political contributions are constitutional under the First Amendment. We also reaffirm, as we held in *Osterberg v. Peca*, that the Legislature's public policy choice to authorize a private right of action passes constitutional muster.[12] Though we further conclude the Election Code's campaign contribution and political contribution definitions are not unconstitutionally vague, we do not reach King Street Patriots's challenge to the Code's political committee definitions because, as a prudential matter, that issue is not ripe.

---

[9] 459 S.W.3d 631, 650 (Tex. App.—Austin 2014).

[10] 539 U.S. 146 (2003).

[11] *Owens Corning v. Carter*, 997 S.W.2d 560, 571 (Tex. 1999) (holding "we are bound by [U.S. Supreme Court precedent] unless and until the Supreme Court overrules it").

[12] 12 S.W.3d 31, 48-49 (Tex. 2000).

4

The parties' agreement to sever King Street Patriots's facial challenges from its as-applied challenges is an unconventional procedural course. As a jurisprudential matter, we do not decide constitutional questions when a dispute may be resolved otherwise. Moreover, under the hierarchy of constitutional inquiry, "the usual judicial practice" is to determine an as-applied challenge before addressing a facial challenge.[13] In this case, adjudication of King Street Patriots's facial challenge to the political committee definitions is premature because the limited record before us establishes King Street Patriots is not a political committee. We therefore hold King Street Patriots's as-applied challenges should be adjudicated before facial constitutionality of the political committee definitions is determined. Accordingly, we affirm the court of appeals' judgment in part, vacate the portions of the lower courts' judgments upholding the facial constitutionality of the political committee definitions of the Texas Election Code, and remand to the trial court for further proceedings consistent with this opinion.

## I. Factual and Procedural Background

Under section 251.001(12) of the Texas Election Code, a "[p]olitical committee" is "a group of persons that has as a principal purpose accepting political contributions or making political expenditures." King Street Patriots denies it meets this definition, arguing it merely "offered to train anyone interested in serving as a poll watcher for any party or candidate" before the 2010 election,[14]

---

[13] *Bd. of Trs. of the State Univ. of N.Y. v. Fox*, 492 U.S. 469, 484-85 (1989).

[14] King Street Patriots is not, however, a person or entity entitled to appoint poll watchers under Texas law. *See* TEX. ELEC. CODE §§ 33.001 ("'Watcher' means a person appointed under this subchapter to observe the conduct of an election on behalf of a candidate, a political party, or the proponents or opponents of a measure."), .002 ("Appointment by Candidate"), .003 ("Appointment by Political Party"), .004 ("Appointment for Write-In Candidate"), .005 ("Appointment for Election on Measure").

trained several hundred people who "observed" the election as poll watchers "to help ensure that election laws were followed," and held weekly meetings on "topics of interest" to local "concerned citizens." King Street Patriots insists speakers at its weekly meetings "are strictly informed that King Street Patriots is nonpartisan" and expressly prohibited from campaigning or promoting themselves at these events. Though money is collected at the meetings, King Street Patriots says (1) the collection process involves no more than passing around a cowboy hat, and (2) it "[has] not made any monetary contributions to any candidate or politician."

The Texas Democratic Party sued King Street Patriots after the 2010 election, alleging the group is a "sham domestic nonprofit corporation" that "was explicitly created in an effort to make and receive political contributions and to make political expenditures without complying with federal or state disclosure laws" and is knowingly operated as "an unregistered and illegal political committee."

The Texas Democratic Party claims King Street Patriots's Election Code violations include:

- making undisclosed and non-independent political expenditures from group members' contributions;

- training and assigning poll watchers "to polling locations in direct coordination with and [at the] request of Republican Party and elected officials";

- designing, preparing, and implementing training materials for poll watchers, which were used by the Travis County Republican Party and others;

- providing forums only for "Republican interests," including "political rallies" for the Governor and other Republican officeholders;

- holding statewide and nationwide "summit[s]" to impact the election; and

6

• organizing events and making expenditures, in funds or in-kind, to press for changes in the Election Code.[15]

The Texas Democratic Party seeks damages and injunctive relief under the Election Code,[16] along with declaratory relief.

In response, King Street Patriots brought counterclaims challenging the constitutionality of several Election Code provisions, sought declaratory and injunctive relief barring the Texas Democratic Party from enforcing those provisions, and requested reimbursement of its attorney's fees and costs.[17] Among other complaints not at issue here, King Street Patriots asserted that myriad provisions of the Texas Election Code, on their face, violate its rights under the First and Fourteenth Amendments to the United States Constitution.[18]

In a Rule 11 Agreement, the parties agreed to (1) sever the counterclaims into a new cause number in which "the only issue to be decided" would be "the [facial] constitutionality of the

---

[15] The Texas Democratic Party alleged violations of Chapter 253 of the Texas Election Code, including sections 253.001 (prohibiting a "person" from knowingly making a political contribution or expenditure in another's name), 253.002 (repealed in 2011, regarding unlawfully directing a campaign expenditure), 253.003 (prohibiting a "person" from knowingly making or accepting a political contribution violating Chapter 253), 253.004 (prohibiting a "person" from knowingly making a political expenditure violating Chapter 253), 253.005 (prohibiting a "person" from knowingly making an expenditure from an unlawful contribution), 253.031 (prohibiting a "political committee" from knowingly accepting a political contribution or making a political expenditure without appointing a campaign treasurer), 253.032 (prohibiting a "political committee" from accepting a contribution over $500 from an out-of-state committee), 253.094 (prohibiting a "corporation" from making an unauthorized political contribution), and 253.104 (prohibiting a "corporation" from knowingly making a contribution to a political party during a proscribed period). The Texas Democratic Party also alleged a failure to comply with the recordkeeping and reporting requirements Chapter 254 imposes on political committees.

[16] TEX. ELEC. CODE §§ 253.131-.132, 273.081.

[17] *Id*. §§ 253.131(e), .132(c). King Street Patriots also invoked a federal civil-rights provision, 28 U.S.C. § 1988, and "any other" applicable authority.

[18] King Street Patriots asserted facial constitutional challenges under the United States Constitution to Texas Election Code sections 251.001(2), (10), (12), (13), (14); 253.031(c); 253.037(a)(1) and (b); 253.062 (repealed in 2011); 253.094; 253.097 (repealed in 2011); 253.104; 253.131; 253.132; and 273.081.

applicable statutes," and (2) abate the original action pending disposition of the severed action. As to the claims in the severed proceeding, the parties stipulated to the following facts:

> King Street Patriots, during and in advance of the 2010 General Election for State and County Officers, conducted, at its own expense, a training and recruitment program for poll watchers. Many of these . . . poll watchers [that King Street Patriots located and trained] were subsequently appointed to serve under Texas Election Code §§ 32.002-003 by the Harris County Republican Party Chairman and/or Republican Nominees with regard to the 2010 General Election for State and County Officers[.]

The parties further stipulated that the Texas Democratic Party intends to "us[e] the private right of action" in Election Code sections 273.081, 253.131, and 253.132 to enforce the challenged statutes against King Street Patriots "based on alleged political speech."

In the severed action, the parties litigated the constitutional issues in cross-motions for summary judgment. King Street Patriots's motion, which was unsupported by evidence, assailed the challenged provisions as facially unconstitutional and unenforceable as a matter of law. Arguing the statutes are facially constitutional, the Texas Democratic Party supported its summary-judgment motion with affidavits, documents, and videos.

The trial court denied King Street Patriots's summary-judgment motion and granted the Texas Democratic Party's motion, finding no constitutional infirmity. The court of appeals affirmed,[19] and King Street Patriots petitioned this Court for review.

---

[19] 459 S.W.3d 631, 650 (Tex. App.—Austin 2014).

8

Narrowing its focus and dropping contentions asserted in the courts below,[20] King Street Patriots limits its constitutional attack here to Election Code provisions (1) "banning" corporate contributions (sections 253.091 and 253.094), (2) creating a private right of action (sections 253.131 and 253.132), (3) defining political committees subject to regulation (section 251.001(12), (13), (14)) and (4) defining political contributions (section 251.001(3), (5)). Recognizing the State's interest in the validity of its laws, we requested the Texas Solicitor General's views on the constitutional issues presented.

## II. Prudential Ripeness

Before turning to the merits, we consider the Texas Solicitor General's argument that, as a threshold matter, King Street Patriots does not, on the record before the Court, qualify as a political committee under the Election Code's plain language. Although the parties did not specifically address this issue in the lower courts, King Street Patriots's status as a political committee is relevant to deciding whether, as a prudential matter,[21] we should entertain its facial-invalidity challenges to the Election Code's political committee definitions.[22]

---

[20] King Street Patriots disavows any intent to seek review of holdings disposing of its Fourth and Eighth Amendment issues, "prior restraint" arguments, and complaints about so-called blackout provisions applicable when political committees fail to timely file a campaign treasurer appointment. Nor has King Street Patriots carried forward its complaints about the Code's "expenditure" definition and the statutory limits on corporate expenditures. With respect to the Election Code's "campaign contribution" and "political contribution" definitions, King Street Patriots limits its appellate complaints to vagueness arising from alleged circularity of the definitions' constituent components and use of "intent" as a key term.

[21] *See Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803, 808 (2003) ("The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction, but, *even in a case raising only prudential concerns, the question of ripeness may be considered on a court's own motion.*" (emphasis added) (citation and quotation marks omitted)); *see also Heckman v. Williamson Cty.*, 369 S.W.3d 137, 154 (Tex. 2012) (noting that Texas's standing doctrine "parallels the federal test for Article III standing").

[22] TEX. ELEC. CODE § 251.001(12)–(14).

Under Section 251.001(12), a "political committee" is "a group of persons that has as a principal purpose accepting political contributions or making political expenditures." A "[p]olitical contribution" is "a campaign contribution or an officeholder contribution," and a "[p]olitical expenditure" is "a campaign expenditure or an officeholder expenditure."[23]

The Election Code defines a "[c]ampaign contribution" as "a contribution to a candidate or political committee that is offered or given with the intent that it be used in connection with a campaign for elective office or on a measure,"[24] and an "officeholder contribution" is "a contribution to an officeholder or political committee . . . offered or given with the intent that it be used to defray expenses . . . incurred by the officeholder in performing a duty or engaging in an activity in connection with the office."[25] "Campaign expenditure" and "[o]fficeholder expenditure" are analogously defined.[26] In *Osterberg v. Peca*, we narrowly construed the statutory definition of "[d]irect campaign expenditure"[27] to avoid vagueness and overbreadth concerns, holding that term

---

[23] *Id.* § 251.001(5), (10).

[24] *Id.* § 251.001(3).

[25] *Id.* § 251.001(4).

[26] A "[c]ampaign expenditure" is "an expenditure made by any person in connection with a campaign for an elective office or on a measure" and an "[o]fficeholder expenditure" is "an expenditure made by any person to defray expenses that are incurred by an officeholder." *Id.* § 251.001(7), (9).

[27] The Code defines "[d]irect campaign expenditure" as "a campaign expenditure that does not constitute a campaign contribution by the person making the expenditure." *Id.* § 251.001(8).

10

refers only to those expenditures that "'expressly advocate' the election or defeat of an identified candidate."[28]

Considering the foregoing, a group is a "[p]olitical committee" if it has a principal purpose of accepting contributions given to the group with the intent that those contributions be used in connection with a campaign for elective office or on a measure or to defray expenses of officeholders.[29] And under *Osterberg*, a group is subject to regulation as a political committee if it has a principal purpose of making expenditures to expressly advocate for a particular outcome in an election.[30]

King Street Patriots maintains it has taken no actions that would make it a political committee, as defined in the Election Code,[31] and specifically denies making any political contributions or expenditures,[32] including expenditures expressly advocating a particular election

---

[28] 12 S.W.3d 31, 51 (Tex. 2000) (holding that a "'direct campaign expenditure' by an individual in a candidate election includes only those expenditures that 'expressly advocate' the election or defeat of an identified candidate"), *citing* Op. Tex. Ethics Comm'n No. 198 (1994) (limiting the Election Code's "campaign expenditure" definition to expenditures for a communication that "'expressly advocates' the defeat or election of an identified candidate, as that term has been used by the United States Supreme Court"); *see also* 1 TEX. ADMIN. CODE § 20.1(21)(A)(i), (B)(i); *Fed. Election Comm'n v. Mass. Citizens for Life, Inc.*, 479 U.S. 238, 248 (1986); *Buckley v. Valeo*, 424 U.S. 1, 80 (1976).

[29] A direct contribution to a candidate, officeholder, or political committee is not an independent expenditure. *See Buckley*, 424 U.S. at 46-48.

[30] We note, however, that *Osterberg*'s express-advocacy requirement applies only to the term "direct campaign expenditure." *See* 12 S.W.3d at 51; *see also* TEX. ELEC. CODE § 251.001(8).

[31] At oral argument, King Street Patriots was more equivocal, stating a belief that it is not a political action committee under federal law but expressing uncertainty about whether it is a political committee under the Texas Election Code.

[32] King Street Patriots claims it makes "neither direct contributions nor indirect contributions" as those terms are defined under federal law in *Buckley*. *See* 424 U.S. at 23 n.24 ("Funds provided to a candidate or political party or campaign committee either directly or indirectly through an intermediary constitute a contribution. In addition, dollars given to another person or organization that are earmarked for political purposes are contributions under the Act.").

11

outcome. Although the Texas Democratic Party sued King Street Patriots claiming the entity is a political committee and a "sham" corporation, the record is silent as to whether those donating to King Street Patriots do so with the intent that their donations be used to defray officeholder expenses or used in connection with a measure or a campaign for elective office. Nor is there evidence that King Street Patriots has a principal purpose of accepting such contributions. King Street Patriots insists it provides training for poll watchers and speaker forums on a nonpartisan basis. It claims speakers at its weekly meetings discuss only "topics of interest" to local "concerned citizens," and speakers "are strictly informed that King Street Patriots is nonpartisan and . . . politicians are not to campaign or promote themselves."[33] Although the Texas Democratic Party claims King Street Patriots violated the Texas Election Code by training and assigning poll watchers "to polling locations in direct coordination with and [at the] request of Republican Party and elected officials" and providing forums only for "Republican interests," these allegations, even when coupled with the available summary-judgment evidence, are insufficient for us to determine whether the activities constitute a principal purpose of the group. Absent other evidence, King Street Patriots could not be a political committee because it would not have "a principal purpose [of] accepting political contributions or making political expenditures."[34]

Our conclusion that, on the limited record before us, King Street Patriots is not a political committee, has left us in a procedural quagmire. We are asked to strike down provisions of a Texas

---

[33] *Cf.* TEX. ELEC. CODE § 251.008 (providing that meeting expenses incurred by certain political clubs in hosting candidates and officeholders are not considered political contributions or political expenditures "if no political contributions are made to or solicited for the candidate or officeholder at the meetings").

[34] *Id.* § 251.001(12).

12

statute with the "strong medicine"[35] of the "disfavored"[36] facial overbreadth doctrine by a party against whom those provisions likely do not apply. The parties' agreement to sever King Street Patriots's facial challenges to the Texas Election Code from the remaining issues in the case is the primary reason for the muddled procedural posture we now face.

"It is not the usual judicial practice . . . nor do we consider it generally desirable, to proceed to an overbreadth issue unnecessarily—that is, before it is determined that the statute would be valid as applied."[37] As the United States Supreme Court has explained, "[s]uch a course would convert use of the overbreadth doctrine from a necessary means of vindicating the plaintiff's own right not to be bound by a statute that is unconstitutional into a means of mounting gratuitous wholesale attacks upon state and federal laws."[38] We agree with the Supreme Court that "for reasons relating both to the proper functioning of courts and to their efficiency, the lawfulness of the particular application of the law should ordinarily be decided first."[39]

We thus refrain from considering King Street Patriots's challenges to the political committee definitions under subsections 251.001(12), (13), and (14) of the Texas Election Code because as-

---

[35] *Comm'n for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 436 (Tex. 1998) (quoting *New York v. Ferber*, 458 U.S. 747, 769 (1982)).

[36] *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450-51 (2008) ("Facial challenges are disfavored for several reasons. Claims of facial invalidity often rest on speculation. As a consequence, they raise the risk of premature interpretation of statutes on the basis of factually barebones records." (citation and quotation marks omitted)).

[37] *Bd. of Trs. of the State Univ. of N.Y. v. Fox*, 492 U.S. 469, 484-85 (1989).

[38] *Id.* at 485.

[39] *Id.*

13

applied constitutional challenges remain pending in the abated action and discovery directed to a threshold legal and prudential matter either has not yet occurred[40] or, if it has occurred, establishes King Street Patriots is not a political committee.[41] The State's jurisprudential interests are not furthered by allowing a facial challenge to the political committee definitions when both this Court and the Solicitor General have concluded, on the record before us, that King Street Patriots does not fall within those definitions. As a prudential matter, we will not consider challenges to the political committee definitions under these circumstances. Because we have determined King Street Patriots's challenges to the political committee definitions are not prudentially ripe, the portions of the lower courts' judgments upholding the facial constitutionality of these definitions are impermissible advisory opinions.[42]

---

[40] *See Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 113 (1962) ("These are delicate problems; their solution is bound to have far-reaching import. Adjudication of such problems, certainly . . . should rest on an adequate and full-bodied record. The record before us is woefully lacking in these requirements.").

[41] *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 300 (1979) ("Even though a challenged statute is sure to work the injury alleged . . . adjudication might be postponed until a better factual record might be available." (citation and quotation marks omitted)); *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 143 (1974) ("[T]here are situations where, even though an allegedly injurious event is certain to occur, the Court may delay resolution of constitutional questions until . . . a better factual record might be available."); *see also Kiser v. Reitz*, 765 F.3d 601, 607 n.2 (6th Cir. 2014) (calling "fitness of the record for review" a matter of "prudential ripeness" (citation and quotation marks omitted)). *But see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) ("[A] federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging." (punctuation and quotation marks omitted)).

Although the Supreme Court recently questioned prudential standing in the context of the zone-of-interests test at issue in *Lexmark*, "[i]t is highly doubtful that [many important doctrinal principles, including prudential ripeness, are] to go by the wayside in the wake of *Lexmark*. Judges have always formulated rules for the decision of cases that constrain their powers more narrowly than external sources—constitutional and statutory jurisdictional provisions—would permit." Ernest A. Young, *Prudential Standing After Lexmark International, Inc. v. Static Control Components, Inc.*, 10 Duke J. Const. L. & Pub. Pol'y 149, 163 (2014).

[42] *See Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 853 (Tex. 2000) (noting "[t]he ripeness doctrine prevents premature adjudication of hypothetical or contingent situations" and a decision ruling on an unripe issue would constitute an "impermissible advisory opinion").

14

Similar prudential concerns do not exist with respect to King Street Patriots's challenges to the Election Code provisions that regulate the activities of corporations, which manifestly apply to King Street Patriots. Accordingly, we consider the merits of those claims below.

### III. Private Right of Action

In *Osterberg v. Peca*, we upheld the Legislature's choice to authorize a limited private right of action to enforce Election Code provisions.[43] The Texas Democratic Party contends, and the Solicitor General agrees, that *Osterberg* is dispositive of King Street Patriots's challenges to Election Code sections 253.131 and 253.132. King Street Patriots maintains *Osterberg* is neither controlling nor dispositive. First, King Street Patriots argues *Osterberg* is distinguishable because it concerned an enforcement action brought only by a single claimant and sections 253.131 and 253.132 create the potential for constitutionally excessive damages by allowing "an unlimited number of private parties to sue" based on the same violations. Second, King Street Patriots argues the private-right-of-action provisions are unconstitutional because plaintiffs are permitted to sue alleged violators—and pursue discovery—without a predicate showing that a claim is meritorious, which *Osterberg* does not address. We reject King Street Patriots's arguments and thus uphold the facial constitutionality of Election Code sections 253.131 and 253.132.[44]

---

[43] 12 S.W.3d 31, 48-49 (Tex. 2000) (rejecting claims that section 253.131 of the Election Code is unconstitutional and not narrowly tailored to serve a compelling state interest because it allows an opposing candidate to bring suit).

[44] In its briefing, King Street Patriots also challenges section 273.081, which authorizes injunctive relief, but asserts in a footnote that it "seek[s] no review here of [the lower court's] holding that this law is not a prior restraint." Because King Street Patriots does not otherwise discuss section 273.081, we cannot discern a basis for its challenge to the provision. Accordingly, we do not address it.

15

We first consider King Street Patriots's arguments that the enforcement provisions lack a constitutional essential: a minimal evidentiary threshold to institute a private enforcement action. Arguing the burdens of discovery are "chilling," King Street Patriots contends the Code's failure to "delineate the showing necessary to seek discovery" effectively denies meaningful protection of a citizen's First Amendment associational rights. King Street Patriots also argues the absence of standards for initiating a suit and seeking discovery violates its due process rights under the Fourteenth Amendment.

While the Election Code does not specifically prescribe standards for limiting discovery or addressing the burdens of litigating meritless claims, procedural safeguards exist in the Texas Rules of Civil Procedure and elsewhere. With regard to discovery burdens, our civil procedure rules limit discovery if "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving those issues."[45] Further, trial courts "must make an effort to impose reasonable discovery limits"[46] and may issue protective orders to avoid unduly burdening constitutional rights of free association and free speech.[47]

---

[45] TEX. R. CIV. P. 192.4(b); *see In re State Farm Lloyds*, 2017 WL 2323099, at *6, ___ S.W.3d ___, ___ (Tex. 2017) (orig. proceeding).

[46] *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding).

[47] *See, e.g.*, *Buckley v. Valeo*, 424 U.S. 1, 66-68 (1976); *In re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371, 375-76 (Tex. 1998) (orig. proceeding).

16

Moreover, claims lacking genuine merit may be resolved expeditiously under Rule 91a's dismissal procedures or summarily under Rule 166a.[48] An important additional safeguard is the trial court's ability under Rule 13 to impose sanctions against attorneys and parties who file pleadings or motions that are groundless and brought in bad faith or for the purpose of harassment.[49] The Election Code itself provides another ameliorative measure, which King Street Patriots has already invoked by counterclaim: reimbursement of reasonable attorney's fees "if judgment is rendered in the defendant's favor."[50]

Concluding that adequate procedural safeguards exist both within the Election Code and via other established mechanisms, we hold the Election Code is not constitutionally defective because it lacks evidentiary prerequisites to a private enforcement action.

In *Osterberg*, we expressly left open "the issue of whether punishment for reporting violations can rise to the level of being so severe and so extreme that it amounts to an unconstitutional infringement of rights under the First Amendment."[51] There, the damages were potentially large, but the Osterbergs did not challenge the statutorily authorized damages on First Amendment grounds.[52] King Street Patriots does not take up this thread, however. Rather than

---

[48] TEX. R. CIV. P. 91a, 166a.

[49] TEX. R. CIV. P. 13; *see also* TEX. CIV. PRAC. & REM. CODE §§ 9.001–10.006 (governing sanctions for frivolous pleadings, claims, and motions).

[50] TEX. ELEC. CODE §§ 253.131(e), .132(c).

[51] 12 S.W.3d 31, 49 n.24 (Tex. 2000).

[52] *Id*. Damages are calculated at "twice the value of the unlawful contribution or expenditure" plus "reasonable attorney's fees incurred in the suit." TEX. ELEC. CODE §§ 253.131(d), .132(b).

framing its challenge in terms of the severity of the potential damages in a privately instituted action, King Street Patriots argues Election Code sections 253.131 and 253.132 would allow "an unlimited number of private parties to sue."[53] King Street Patriots's complaint could be construed as asserting that too many people may be able to sue for the same violations or that a damages cap is constitutionally necessary in this context.

However the argument may be viewed, King Street Patriots is correct that sections 253.131 and 253.132 could allow more than one private party to sue, though the number would hardly be "unlimited." A case involving an improper contribution in opposition to a candidate, as in *Osterberg*, would have only one possible claimant—the candidate who was opposed. A case involving a contribution made in support of a candidate could have multiple "opposing candidates" authorized to sue, but only so many as appeared on the ballot.

While a case involving a contribution to a political committee is not necessarily as limited, viewing the number of potential plaintiffs as "unlimited" would require us to ignore the jurisdictional

---

[53] Section 253.131 provides:

(a) A person who knowingly makes or accepts a campaign contribution or makes a campaign expenditure in violation of this chapter is liable for damages as provided by this section.

(b) If the contribution or expenditure is in support of a candidate, each opposing candidate whose name appears on the ballot is entitled to recover damages under this section.

(c) If the contribution or expenditure is in opposition to a candidate, the candidate is entitled to recover damages under this section.

Section 253.132(a) provides:

A corporation or labor organization that knowingly makes a campaign contribution to a political committee . . . in violation of Subchapter D [§§ 253.091–.104] is liable for damages as provided by this section to each political committee of opposing interest in the election in connection with which the contribution or expenditure is made.

18

constraint of standing and "imagine" unrealistic hypothetical scenarios, which a facial challenge does not allow.[54] Texas is home to a lot of political committees.[55] But even though Texas election statutes have included a provision granting a private right of action against corporations since 1951,[56] there have been only a handful of suits since.

To successfully mount a claim under the Election Code, a potential plaintiff would have to prove it was a political committee with an "opposing interest in the election in connection with which the contribution [] was made."[57] A political committee supporting a measure might be matched with multiple political committees opposing that measure. Or none. If the donation was made to a political committee supporting a candidate, or multiple candidates, an alleged violation might trigger a claim by all committees opposing any one or all of those candidates. On the other hand, if candidates share political committees, there may be fewer committees than there are

---

[54] *Comm'n for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 436 (Tex. 1998) ("[A] statute will not be invalidated for overbreadth merely because it is possible to imagine some unconstitutional applications." (citing *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984) (requiring a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court"))); *see also Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449-50 (2008) ("In determining whether a law is facially invalid, we must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases.").

[55] There are currently around 1,900 active political committees registered in Texas; the number has been relatively stable since 2011. *See* TEX. ETHICS COMM'N, POLITICAL COMM. LISTS, https://www.ethics.state.tx.us/dfs/paclists.htm (last visited June 30, 2017). The website does not include numbers from before 2010, the year the *Citizens United* decision issued.

[56] Act of May 30, 1951, 52d Leg., R.S., ch. 492, § 1, 1951 Tex. Gen. Laws 1097, 1190 [HB 6] (codified as former TEX. ELEC. CODE § 14.07(b)) ("Any corporation making or promising a gift, loan, or payment to any candidate, campaign manager, assistant campaign manager, or other person in violation of Paragraph (a) of this Section shall be civilly liable for double the amount or value of such loan or gift, promised or made, to each opponent of the candidate favored by such gift, loan, or payment, or to the particular candidate or candidates opposed by such gift, loan, or payment.").

[57] TEX. ELEC. CODE § 253.132(a). Plaintiffs also risk, if they lose, an award of attorney's fees. *Id.* § 253.132(c).

19

candidates on the ballot. Here, the plaintiffs include only one political committee and two candidates.

The fear that a horde of claimants could assert multiple claims based on the same violations and extract a cumulatively excessive sum from that defendant is daunting. But we do not invalidate statutes "for overbreadth merely because it is possible to imagine some unconstitutional applications."[58] Claims of facial invalidity often rest on speculation; that is one of the reasons such claims are disfavored.[59] We should not speculate about "hypothetical" or "imaginary" cases.[60] Facial challenges are also disfavored because they "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution."[61] King Street Patriots may yet be able to show that the damages sought against it are excessive, but has not established the statute is facially invalid.

## IV. Ban on Corporate Contributions

Election Code section 253.094 generally prohibits corporations from making political contributions:

(a) A corporation or labor organization may not make a political contribution or political expenditure that is not authorized by this subchapter.

---

[58] *Benton*, 980 S.W.2d at 436 (citing *Members of City Council*, 466 U.S. at 800).

[59] *Wash. State Grange*, 552 U.S. at 450; *see also Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998) ("Facial invalidation 'is, manifestly, strong medicine' that 'has been employed by the Court sparingly and only as a last resort.'" (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973))).

[60] *Wash. State Grange*, 552 U.S. at 449-50 (citing *U.S. v. Raines*, 362 U.S. 17, 22 (1960)).

[61] *Id.* at 451.

20

(b) A corporation or labor organization may not make a political contribution or political expenditure in connection with a recall election, including the circulation and submission of a petition to call an election.

(c) A person who violates this section commits an offense. An offense under this section is a felony of the third degree.[62]

Section 253.091 applies these contribution restrictions "only to corporations that are organized under the Texas Business Corporation Act, the Texas For-Profit Corporation Law, the Texas Non-Profit Corporation Act, the Texas Nonprofit Corporation Law, federal law, or law of another state or nation."[63]

Section 253.094's current incarnation reflects a 2011 amendment that removed a limitation on political expenditures in response to the United States Supreme Court's decision in *Citizens United v. Federal Election Commission*.[64] Restrictions on corporate political contributions remained intact, however, presumably because the Supreme Court's *Citizens United* decision did not overturn its earlier holding in *Federal Election Commission v. Beaumont* that laws barring corporate political contributions are "consistent with the First Amendment" and are not subject to strict scrutiny.[65]

---

[62] TEX. ELEC. CODE § 253.094.

[63] *Id.* § 253.091.

[64] 558 U.S. 310, 359 (2010).

[65] *Fed. Election Comm'n v. Beaumont*, 539 U.S. 146, 149 (2003); *see also Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 359 (2010) ("Citizens United has not made direct contributions to candidates, and it has not suggested that the Court should reconsider whether contribution limits should be subjected to rigorous First Amendment scrutiny.").

Advocating for an expansion of *Citizens United*, King Street Patriots challenges the facial constitutionality of the Texas Election Code's corporate contribution restrictions on the basis that post-*Beaumont* Supreme Court decisions undermine that precedent's continued vitality.[66]

The Texas Democratic Party and the Solicitor General stress that *Beaumont* (1) establishes the First Amendment does not prohibit a governmental ban on direct corporate contributions to candidates and (2) remains binding Supreme Court precedent.[67] We concur. Only the Supreme Court has the "prerogative . . . to overrule one of its precedents."[68] Thus even if *Beaumont*'s rationale is in doubt, we are bound to follow it unless and until the Supreme Court overrules it.[69] Our unanimous acknowledgment that *Beaumont* is binding Supreme Court precedent terminates our inquiry.[70] As the Supreme Court has admonished, any further examination is "wrong," even querying whether subsequent authority impugns its continued vitality.[71] Our role is simply to "say what the law is,"[72] not prognosticate how the law could change. Applying *Beaumont*, we conclude sections 253.091 and 253.094 of the Texas Election Code are not unconstitutional.

---

[66] *See, e.g.*, *Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 879 n.12 (8th Cir. 2012) (noting that "*Citizens United*'s outright rejection of the government's antidistortion rationale . . . casts doubt on *Beaumont*, leaving its precedential value on shaky ground," but following *Beaumont* as controlling precedent).

[67] *See Beaumont*, 539 U.S. at 149.

[68] *Bosse v. Oklahoma*, 137 S. Ct. 1, 2 (2016).

[69] *See Owens Corning v. Carter*, 997 S.W.2d 560, 571 (Tex. 1999).

[70] *Bosse*, 137 S. Ct. at 2.

[71] *Id.*

[72] *Marbury v. Madison*, 5 U.S. 137, 177 (1803).

## V. Vagueness of Statutory Definitions

King Street Patriots argues the campaign contribution and political contribution definitions in section 251.001 of the Texas Election Code are unconstitutionally vague because they are circular and employ an intent-based standard. With regard to circularity, King Street Patriots notes that:

- "campaign contribution" is defined as a contribution to a "political committee";

- "political committee" is a group that has accepting "political contributions" as a principal purpose; and

- "political contribution" is defined as a "campaign contribution."[73]

King Street Patriots complains that circular definitions are "not especially helpful."[74]

The definition of campaign contribution is also tied to the intent with which a contribution is offered or given. Relying on United States Supreme Court precedent that "[a]n intent-based standard 'blankets with uncertainty whatever may be said,' and 'offers no security for free discussion,'"[75] King Street Patriots argues the Texas Election Code's campaign-contribution definition is hopelessly vague.[76]

---

[73] *See* TEX. ELEC. CODE § 251.001(2), (3), (5), (12).

[74] *See Bilski v. Kappos*, 561 U.S. 593, 622 (2010).

[75] *Fed. Election Comm'n v. Wis. Right To Life, Inc.*, 551 U.S. 449, 468 (2007) (quoting *Buckley v. Valeo*, 424 U.S. 1, 43 (1976)).

[76] TEX. ELEC. CODE § 251.001(3) ("'Campaign contribution' means a contribution to a candidate or political committee that is offered or given *with the intent that it be used in connection with a campaign for elective office or on a measure*. Whether a contribution is made before, during, or after an election does not affect its status as a campaign contribution." (emphasis added)).

When persons of common intelligence are compelled to guess a law's meaning and applicability, the law violates due process and is invalid.[77]  But to succeed in a facial due process challenge "the complainant must demonstrate that the law is impermissibly vague in all of its applications."[78]  If a "law interferes with the right of free speech or of association, a more stringent vagueness test should apply"[79] because "[u]ncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked."[80]

The Texas Court of Criminal Appeals addressed similar complaints about the Election Code's intent-based political- and campaign-contribution definitions in *Ex parte Ellis*.  Applying Supreme Court guidance, the *Ellis* court said "the practical difficulty a factfinder may have in ascertaining intent does not render a law unconstitutionally vague."[81]  We agree the challenged definitions are not unconstitutionally vague merely because they are intent-based.

We also reject Kings Streets Patriots's argument that the definitions are circular and, thus, vague.  When the component definitions are embedded into one another, we discern no uncertainty of meaning: "campaign contribution" is "a [direct or indirect transfer of money, goods, services, or any other thing of value] to a candidate or [a group of persons that has a principal purpose of

---

[77] *See Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

[78] *Vill. of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982).

[79] *Id.* at 499.

[80] *Grayned*, 408 U.S. at 109 (punctuation and citations omitted).

[81] 309 S.W.3d 71, 89 (Tex. Crim. App. 2010).

accepting (campaign or officeholder) contributions].”[82]   The indirect reference to “campaign contribution” within the definition of “campaign contribution” is not circular because it is used only to reference a group’s “principal purpose,” not the essence of the defined term.  Persons of common intelligence are not compelled to guess at the meaning and applicability of the political- and campaign-contribution definitions; accordingly, they are not void for vagueness.

## VI. Conclusion

Because we lack power to overturn United States Supreme Court precedent, we uphold the Texas Election Code’s restrictions on corporate contributions.  We further hold the Code’s definitions of “campaign contribution” and “political contribution” are neither circular nor unconstitutionally vague, and we will not disturb the Texas Legislature’s policy preferences reflected in the private rights of action provisions of the Code.  Although the parties invite us to review the merits of King Street Patriots’s facial challenges to the Code’s political committee definitions, we decline in light of our view, which the Texas Solicitor General shares, that King Street Patriots is not a political committee on the record before us.  Absent other evidence, that conclusion would be fatal to the Texas Democratic Party’s claims.  Thus, making a determination of facial constitutionality is premature and prudentially unripe.  Accordingly, we affirm the court of appeals’ judgment in part, vacate the portions of the lower courts’ judgments upholding the facial constitutionality of the political committee definitions of the Texas Election Code, and remand the case to the trial court for further proceedings consistent with this opinion.

---

[82] Tex. Elec. Code § 251.001(2), (3), (5), (12).

25

_____

Eva M. Guzman
Justice

**OPINION DELIVERED**:  June 30, 2017

26