# Supreme Court of Texas

---

No. 24-0340

---

Reynaldo "Rey" Gonzalez, Jr., M.D., J.D.,

*Petitioner*,

v.

Texas Medical Board,

*Respondent*

---

On Petition for Review from the
Court of Appeals for the Third District of Texas

---

**Argued September 10, 2025**

JUSTICE SULLIVAN delivered the opinion of the Court.

Justice Hawkins did not participate in the decision.

Rey Gonzalez, Jr. drew regulatory attention from an unlikely source. Because he was running for Congress, Gonzalez might've expected to interact with various local election officials, the Attorney General, or the Federal Election Commission. But he probably didn't expect to be investigated by the Texas Medical Board.

TMB's job is to promote public health by stopping anyone without a license from practicing medicine, and by ensuring that licensed doctors adhere to standards of care. Gonzalez drew TMB's ire not because of conduct in the operating room, however, but because of statements he made on the campaign trail. Though Gonzalez received a medical degree (M.D.) from an accredited medical school, he never received a medical license. In seeking elected office, he ran as "Dr. Gonzalez" and referred to himself as a "physician." TMB argues that this violated the Medical Practice Act and the Healing Art Identification Act because Gonzalez was not a licensed medical professional. Gonzalez counters that he did not break the law and, if he did, then the statutes in question violate his free-speech rights under the First Amendment to the U.S. Constitution and Article I, Section 8 of the Texas Constitution.

The district court dismissed all of Gonzalez's claims for want of jurisdiction. The court of appeals affirmed as to most of his claims but sent one of them back for further proceedings. It should've sent more, for the redundant-remedies doctrine does not bar his *ultra vires* and as-applied constitutional claims. We reverse in part and remand to the district court.

**I**

Agencies like the Texas Medical Board have long ensured that medical practitioners are properly licensed and observe established standards of care. In fact, TMB is arguably one of Texas's oldest agencies: Less than two years after the Battle of San Jacinto, the Congress of the Republic of Texas passed the first "Medical Practice

2

Act," creating the Board of Medical Censors—a TMB predecessor.[1] While Texans have long looked to agencies like TMB to regulate medicine, there is considerably less precedent for that agency policing political campaigns. Indeed, as far as TMB is aware, this case marks the first time it has disciplined someone for statements made on the campaign trail. *Cf. Serafine v. Branaman*, 810 F.3d 354, 358–62 (5th Cir. 2016) (holding that the Texas State Board of Examiners of Psychologists violated a candidate's First Amendment rights by forbidding her from using the title "psychologist" in her campaign).

Before he ran for Congress, Gonzalez obtained two advanced degrees: one in medicine and one in law. Gonzalez decided to practice law. He also taught as an adjunct professor at the University of Texas and was a member of the American Board of Legal Medicine. Though he is licensed to practice law, he has never been licensed to practice medicine.

While campaigning for a seat in Congress, he referred to himself as "Dr. Gonzalez" and called himself a "physician." Gonzalez's candidate profile gives a good sense of the general tenor of these statements:

> By God's grace I am a physician and an attorney. I adopted a motto years ago which appears on my office's logo. It says in Latin, "Vocatus ad Sanandum," which means, "Called to Heal." My calling to serve in medicine was to heal the sick. My calling to serve in law is to heal my fellow man who is wronged by a third party. My most recent calling, to serve

---

[1] *See* Act of Dec. 14, 1837, 2d Cong., R.S., §§ 1–10, 1837 Repub. Tex. Laws 39, 39–41, reprinted in 1 H.P.N. Gammel, The Laws of Texas 1822–1897, at 1381, 1381–83 (Austin, Gammel Book Co. 1898). The General Land Office is older still. *See* Act of Dec. 22, 1836, 1st Cong., R.S., §§ 1–28, 1836–37 Repub. Tex. Laws 216, 216–24, reprinted in 1 H.P.N. Gammel, The Laws of Texas 1822–1897, at 1276, 1276–84 (Austin, Gammel Book Co. 1898).

3

in the United States House of Representatives, is to contribute to the healing and a return to civility to our nation.

TMB received a complaint that, through such statements, Gonzalez was falsely "holding himself out as a physician" and improperly calling himself "Dr. Gonzalez."

TMB opened an investigation to determine whether Gonzalez's statements amounted to the unlicensed practice of medicine. After a hearing, TMB concluded that Gonzalez had violated the Medical Practice Act and the Healing Art Identification Act, and issued a cease-and-desist order. This order commanded Gonzalez to stop using the titles "doctor," "physician," and "Dr." (as in, "Dr. Gonzalez") without "designating the authority giving rise to th[ose] title[s]." In other words, Gonzalez would have to disclose in his campaign materials—and perhaps in the middle of speeches—that he held an M.D. but wasn't licensed to practice medicine or else refrain from using these titles. TMB warned that failure to heed the cease-and-desist order would expose him to civil penalties of $5,000 per violation. Gonzalez filed a motion for rehearing, which was overruled by operation of law. Eighty-one days later, he sued TMB in Travis County District Court.

Gonzalez's live petition lists many claims for relief, but they really boil down to four general arguments:

1. the cease-and-desist order was not supported by substantial evidence;

2. Texas Occupations Code § 104.004 is unconstitutional as applied to him;

3. Texas Occupations Code § 104.004 is facially unconstitutional because it prohibits anyone who has a medical or other doctoral degree from truthfully describing their education and training; and

4

4. TMB exceeded its statutory authority by regulating Gonzalez because he is not licensed to practice medicine and has not in fact practiced or attempted to practice medicine in Texas (the "*ultra vires* claim").

Gonzalez therefore asked the trial court to set aside the cease-and-desist order, declare that TMB exceeded its statutory authority, temporarily enjoin TMB from enforcing the cease-and-desist order pending a final decision on the merits, and grant "such other and further equitable relief to which the plaintiff is entitled both at law and in equity."

TMB argued that the district court lacked jurisdiction to decide the merits, and the district court agreed. The court of appeals largely affirmed but reversed as to Gonzalez's facial constitutional claim and remanded it to the district court for further proceedings.

Gonzalez filed a petition for review, which we granted. TMB did not file a cross-petition for review.

## II

The court of appeals held that most of Gonzalez's claims were barred by the redundant-remedies doctrine. 716 S.W.3d 664, 680–82 (Tex. App.—Austin 2023). "Under the redundant remedies doctrine, courts will not entertain an action brought under the [Uniform Declaratory Judgments Act] when the same claim could be pursued through different channels." *Patel v. Tex. Dep't of Licensing & Regul.*, 469 S.W.3d 69, 79 (Tex. 2015). According to the court of appeals, Gonzalez's *ultra vires* claim and as-applied constitutional claim were barred because he could've sought reversal of the cease-and-desist order through a timely challenge under the Administrative Procedure Act. 716 S.W.3d at 681–82. But it also held that his facial challenge to the statute did not seek redundant remedies because a "declaration that

5

Section 104.004 is unconstitutional on its face would 'go beyond reversal' of the cease-and-desist order." *Id.* at 682 (citing *Patel*, 469 S.W.3d at 79). It therefore remanded Gonzalez's facial constitutional claim to the district court for further proceedings.[2]

The court of appeals should've remanded additional claims. Even if Gonzalez could've sought judicial review under the APA, his *ultra vires* and as-applied constitutional claims sought declaratory relief that "goes beyond reversal of an agency order." *Patel*, 469 S.W.3d at 79. In coming to the opposite conclusion, the court of appeals went astray in two ways.

First, the court adopted an unfairly cramped interpretation of Gonzalez's live petition. On its account, all of Gonzalez's claims besides his facial constitutional claim "challenge only the cease-and-desist order." 716 S.W.3d at 681. That's not how we read Gonzalez's petition. To be sure, the petition repeatedly refers to the cease-and-desist order, and obtaining relief from that order is obviously one reason (maybe even the main reason) Gonzalez sued. But he also sought declaratory and injunctive relief on the grounds that the agency lacked statutory authority to regulate non-licensees and that even if the relevant statutes empowered TMB to act as it did, those statutes are unconstitutional as applied to him. The plain thrust of both claims is that TMB could not legally take any adverse action based on Gonzalez's describing himself as a "physician" and "doctor" in the course of his campaign. A

---

[2] The limited remand ordered by the court of appeals would've put the district court in an awkward position, given that "'the usual judicial practice' is to determine an as-applied challenge before addressing a facial challenge." *King St. Patriots v. Tex. Democratic Party*, 521 S.W.3d 729, 732 (Tex. 2017) (quoting *Bd. of Trs. v. Fox*, 492 U.S. 469, 484–85 (1989)).

6

declaration that the statutes do not apply to Gonzalez would protect him from future sanctions, not just from the cease-and-desist order. The same is true of a declaration that it would violate Gonzalez's constitutional rights for TMB to punish him for calling himself a doctor or physician. These two claims, no less than his facial constitutional claim, challenged more than the cease-and-desist order.[3]

Second, the court of appeals erred in emphasizing that Gonzalez could've raised his as-applied constitutional and *ultra vires* claims in a timely petition for judicial review under the APA. 716 S.W.3d at 681. True but irrelevant. Were that the test, his facial constitutional claim would also need to be scrapped because it too could've been raised in an APA proceeding. *See* Tex. Gov't Code § 2001.174(2)(A) (prescribing reversal if the agency's decision was "in violation of a constitutional or statutory provision"); *City of Corpus Christi v. Pub. Util. Comm'n*, 51 S.W.3d 231, 235–36 (Tex. 2001) (per curiam) (considering facial

---

[3] At oral argument, counsel for TMB complained that Gonzalez's petition did not include a claim for declaratory or injunctive relief on constitutional grounds. We needn't decide whether Gonzalez went far enough in his prayer for relief by asking for "such other and further equitable relief to which the plaintiff is entitled both at law and in equity." *Cf. Starr v. Ferguson*, 166 S.W.2d 130, 133 (Tex. 1942) ("[A] plaintiff, under a prayer for general relief, may be awarded the relief to which the pleadings and the evidence may entitle him."). Gonzalez's case was already bound for the district court on remand, because TMB didn't file a cross-petition for review. *See* Tex. R. App. P. 53.1 ("A party who seeks to alter the court of appeals' judgment must file a petition for review."). And as the able Deputy Solicitor General conceded from the podium, Gonzalez will be free to file an amended petition upon returning to the district court. Once there, Gonzalez can add a claim for prospective relief and name other defendants as he thinks proper. *See, e.g.*, *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 (Tex. 2009) (holding that "*ultra vires* suits . . . must be brought against the state actors in their official capacity").

constitutional challenge upon review of a contested-case proceeding). But it doesn't matter whether Gonzalez could've brought the same claims. What matters is whether the APA would've afforded him the same remedy—that's why we call it the redundant-*remedies* doctrine, not the redundant-*claims* doctrine.

Take *Patel*. There, too, the agency noted that the plaintiffs could've raised their as-applied constitutional claims in an APA proceeding. *Patel*, 469 S.W.3d at 79. We rejected that argument because "[t]he available *remedies* on appeal from an administrative finding are limited to reversal of the particular orders at issue." *Id.* (emphasis added); *see also Jones v. Turner*, 646 S.W.3d 319, 328 (Tex. 2022) (noting that plaintiffs "could be awarded *relief* that would render a declaratory judgment redundant and thus improper" (emphasis added)). Because the plaintiffs wanted "more than a reversal of the citations issued," insofar as they sought "prospective injunctive relief against future agency orders based on the statutes and regulations," the APA did "not provide a redundant remedy." *Patel*, 469 S.W.3d at 79.

The same logic applies with equal force here. Although Gonzalez could've raised his facial and as-applied constitutional claims in an APA proceeding, doing so could only have won reversal of TMB's cease-and-desist order. That would give him no solace should he continue to engage in campaign speech that he thinks is constitutionally protected and TMB thinks is illegal. Because the remedies Gonzalez seeks are broader than anything the APA might've afforded, the court of appeals erred in dismissing his *ultra vires* and as-applied constitutional claims.

8

## III

Gonzalez's substantial-evidence claim, on the other hand, was properly dismissed for want of jurisdiction. In affirming on this point, we take a more direct path than the opinion below.

The court of appeals held that Gonzalez's challenge to TMB's cease-and-desist order was untimely under the APA. 716 S.W.3d at 676–80. "Absent an express statutory provision indicating that the APA is inapplicable to cease-and-desist proceedings under the Medical Practice Act," it reasoned, there is "no basis for concluding that the APA does not apply in this case." *Id.* at 678. It then decided that these cease-and-desist proceedings were a "contested case" within the meaning of the APA because TMB chose to give Gonzalez a hearing. *Id.* at 678–79 (citing Tex. Gov't Code § 2001.003(1)).[4] Having thus determined that the APA applies, the court of appeals concluded that Gonzalez missed by several months "the thirty-day deadline provided in the APA for

---

[4] In the past, the Third Court of Appeals has held that a proceeding is a "contested case" if the agency "in fact provided an adjudicative hearing on the issue, independent of whether the agency's statute required one." *Vazquez v. Health & Hum. Servs. Comm'n*, No. 03-20-00075-CV, 2021 WL 3176031, at *5 (Tex. App.—Austin July 28, 2021, pet. denied) (quoting *Heat Energy Advanced Tech., Inc. v. W. Dall. Coal. for Env't Just.*, 962 S.W.2d 288, 291 n.1 (Tex. App.—Austin 1998, pet. denied)). We note that there is some evidence that the phrase "contested case" refers to a legislatively mandated adjudicative hearing—not a proceeding where an agency unilaterally chooses to hold a hearing. *See* Robert W. Hamilton & J. J. Jewett III, *The Administrative Procedure and Texas Register Act: Contested Cases and Judicial Review*, 54 Tex. L. Rev. 285, 290 (1976) (concluding that the definition of "contested case" likely did not encompass proceedings in which agencies chose to hold a hearing as a matter of discretion). While the parties here disagree whether the cease-and-desist proceedings constituted a "contested case," we need not resolve this issue for the reasons discussed below.

judicial review of agency orders." *Id.* at 677, 680 (citing Tex. Gov't Code § 2001.176(a)).

There's an easier way to dispose of the substantial-evidence claim because Gonzalez disclaims any reliance on the APA. He contends that "TMB created a right to judicial review independent of the APA" by promulgating a since-repealed rule that enabled a party aggrieved by a cease-and-desist order to file a petition in Travis County District Court, with "no deadline to seek judicial review." Petitioner's Br. 20 (citing 22 Tex. Admin. Code § 187.83(f) (2017), repealed by 50 Tex. Reg. 404, 404–05 (2025)).

Jurisdiction doesn't work that way. "It is well recognized under Texas law that there is no right to judicial review of an administrative order unless a *statute* provides a right or unless the order . . . violates a constitutional right." *Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 397 (Tex. 2000) (emphasis added).[5] As a result, "an agency's rulemaking power cannot validly expand or create district court jurisdiction beyond that given in the Legislature's own enactments." *Cont'l*, 19 S.W.3d at 397 n.5.

As master of his own litigation, Gonzalez was free to disclaim reliance on the APA. To bring his substantial-evidence claim within the district court's jurisdiction, however, he needed to point to a statute authorizing judicial review, not a mere agency rule. Because he did not, the district court was right to dismiss this claim.

---

[5] Gonzalez doesn't argue that he has an inherent constitutional right to judicial review, so we needn't consider that possibility here. *See Chem. Bank & Tr. Co. v. Falkner*, 369 S.W.2d 427, 433 (Tex. 1963).

10

*    *    *

If the Texas Medical Board thinks it has the power to police campaign speech, it will have to defend that position on the merits. We reverse in part, affirm in part, and remand to the district court for further proceedings on Gonzalez's facial constitutional claim, his as-applied constitutional claim, and his *ultra vires* claim.

James P. Sullivan
Justice

**OPINION DELIVERED:** October 31, 2025