# Supreme Court of Texas

———————

No. 24-0271

———————

Gardens of Connemara Ltd. and Emerson Farm Company, Ltd.,

*Petitioners,*

v.

Longhorn Creek Ltd.,

*Respondent*

———————

On Petition for Review from the
Court of Appeals for the Fifth District of Texas

———————

JUSTICE YOUNG, concurring in the denial of the petition for review.

This case raises the important question of when a trial court must consider pleading exhibits appended to a petition in ruling on a Rule 91a motion to dismiss. The answer depends on yet another question: whether the pleading exhibits constitute, "in whole or in part, the claim sued on." Texas courts should carefully analyze these questions, and this Court will likely need to resolve them in a future case—but not this one. I write separately to address why the Rule 91a issue is important, why I have some doubts about how the court of appeals resolved it here, and why other issues in the case nonetheless would sufficiently complicate our review as to warrant denial of this petition.

**I**

First, the facts. Longhorn Creek filed a declaratory-judgment suit against Gardens of Connemara and Emerson Farm Company (together, Connemara) seeking to avoid a private transfer fee. A private transfer fee is "an amount of money . . . that is payable on the transfer of an interest in real property or payable for a right to make or accept a transfer." Tex. Prop. Code § 5.201(4). The basis for the private transfer fee here arose in 2005 when, ostensibly for the rest of time, Connemara burdened every subsequent purchaser of hundreds of acres of land with the obligation to pay Connemara "a fee equal to 1% of the Value of the Conveyed Land." A $100,000 house subject to the fee, for example, would generate $1,000 for Connemara every time the house sold, no matter how frequently or rarely.

Private transfer fees sound rather like the toll demanded by the troll under the bridge in children's fairy tales. The theory underlying them is more benign: that imposing private transfer fees on future resales of affected land may give real-estate developers an opportunity to "spread[] the purchase price of property over time" and to "allocat[e] risk and shar[e] profit from property development." *See* Restatement (Third) of Prop. (Servitudes): Indirect Restraints on Alienation and Irrational Servitudes § 3.5 cmt. a (2000). Notwithstanding these commercial benefits, critics of private transfer fees have argued that the covenants "constitut[e] unsound public policy" because, among other reasons, they impose "unwarranted transaction costs" that "com[e] at the expense of the public." *E.g.*, R. Wilson Freyermuth, *Putting the Brakes on Private Transfer Fee Covenants*, 24 Prob. & Prop. 20, 23–24 (2010).

The legislature has come down more on the side of the critics. In 2011, it passed, and the governor signed, a bill "relating to prohibiting certain private transfer fees and the preservation of private real property rights." Act of May 24, 2011, 82d Leg., R.S., ch. 211, 2011 Tex. Gen. Laws 780, 780 (codified at Tex. Prop. Code §§ 5.201–.207). Through the new statute, Texas law now "in large part prohibit[s] the use of private transfer fees associated with real property transactions." Tex. Att'y Gen. Op. No. KP-0195, at 1 (2018). With certain exceptions, it ensures that "a private transfer fee obligation created on or after [June 17, 2011] is not binding or enforceable against a subsequent owner or subsequent purchaser of an interest in real property and is void." Tex. Prop. Code § 5.202(a).

The statute, however, affords a measure of protection to preexisting private-transfer-fee obligations like the one that Connemara claims. *See generally id.* § 5.203(a), (c)–(d), (f). For Connemara to maintain its right to the payments, beginning in 2012 and every three years thereafter, *see id.* § 5.203(d)(1), it must file a "Notice of Private Transfer Fee Obligation . . . in the real property records of [the] county in which the [encumbered] property is located," *see id.* § 5.203(a). Among other things, the notice must (1) "be printed in at least 14-point boldface type" and (2) "state the legal description of the property subject to the private transfer fee obligation." *Id.* § 5.203(c)(1), (8). To that end, Connemara filed notices in Collin County's real-property records in 2012, 2015, 2018, and 2021.

Longhorn Creek purchased acreage that Connemara maintains is subject to the private transfer fee. To escape its obligation, Longhorn

3

Creek seeks a declaration that the fee is void. Its primary allegation is that the notices Connemara filed in the real-property records did not strictly comply with § 5.203(c)—specifically, that they were not printed in at least 14-point boldface type and failed to state the legal description of the property subject to the obligation. Longhorn Creek's amended petition—and this is key—attached as exhibits the notices that Connemara filed in 2012, 2015, 2018, and 2021.

Connemara filed a Rule 91a motion to dismiss, arguing that this and Longhorn Creek's other theories "ha[ve] no basis in law." Tex. R. Civ. P. 91a.1. The trial court granted the motion, but the court of appeals reversed. 686 S.W.3d 418, 430 (Tex. App.—Dallas 2024). Significantly, the court of appeals reached this result while refusing to consider the actual notices, which Longhorn Creek itself had appended and which are available in the real-property records. The court instead "consider[ed] *only* Longhorn Creek's [amended petition]." *Id.* at 428–29 (emphasis added).

Connemara argues that this approach to Rule 91a was error. According to Connemara, Longhorn Creek's pleading exhibits "establish that [Connemara] complied with the statutory notice requirements for private transfer fees," thus disposing of Longhorn Creek's lead theory for declaratory judgment. In other words, Connemara asserts, the court of appeals should have decided the Rule 91a motion based on Longhorn Creek's amended petition "together with" the notices, *see* Tex. R. Civ. P. 91a.6, which "constitut[e], *in whole or in part*, the claim sued on," *id.* R. 59 (emphasis added).

Longhorn Creek also advanced two entirely distinct theories that, if meritorious, would (allegedly) defeat its obligation: (1) Connemara

4

waived the private-transfer-fee obligation by releasing third parties from it in exchange for an increased transfer fee upon the sale of certain property; and (2) the fee does not "touch and concern the land."  The court of appeals ruled for Longhorn Creek on both of those issues, too.  686 S.W.3d at 429–30.

## II

If the Rule 91a issue were the only one presented by the petition, and if the issue had been fully aired in other courts of appeals,* this Court

---

\* Connemara helpfully observes that courts of appeals have "consider[ed] pleading exhibits that are the subject of a declaratory judgment action" when ruling on a Rule 91a motion to dismiss.  Pet. 8 (first citing *Raider Ranch, LP v. Lugano, Ltd.*, 579 S.W.3d 131 (Tex. App.—Amarillo 2019, no pet.); then citing *Parsley Mins., LLC v. Flat Creek Res., LLC*, No. 03-21-00337-CV, 2023 WL 2052315 (Tex. App.—Austin Feb. 17, 2023, no pet.); and then citing *Farr v. Barnes*, No. 04-19-00895-CV, 2020 WL 6048770 (Tex. App.—San Antonio Oct. 14, 2020, no pet.)).

Clearly, courts are enforcing Rule 91a.6 and excluding evidence from consideration when they deem it appropriate.  *E.g.*, *City of Houston v. De La Cruz*, No. 01-24-00797-CV, 2025 WL 3672311, at \*5 (Tex. App.—Houston [1st Dist.] Dec. 18, 2025, no pet. h.); *Brady v. Progressive Ins.*, No. 01-24-00446-CV, 2025 WL 3672309, at \*1 n.1, \*3 & n.2 (Tex. App.—Houston [1st Dist.] Dec. 18, 2025, no pet. h.); *Neely v. Midland Cmty. Theater Bd. of Trs.*, No. 11-23-00152-CV, 2025 WL 284919, at \*5–6 (Tex. App.—Eastland Jan. 24, 2025, no pet.); *PBAC 507 Holdings, LLC v. Broadview Props., LLC*, No. 03-23-00411-CV, 2024 WL 3974793, at \*4 (Tex. App.—Austin Aug. 29, 2024, no pet.); *cf. C.V.P.G. Fam. Tr. v. PlainsCapital Bank*, No. 08-23-00320-CV, 2024 WL 2445793, at \*5 n.5 (Tex. App.—El Paso May 23, 2024, no pet.) (noting that the parties did "not dispute that consideration of the exhibits attached to [the] petition . . . was proper" and agreeing with that conclusion); *Burke v. Union Pac. Res. Co.*, 138 S.W.3d 46, 67 (Tex. App.—Texarkana 2004, pet. dism'd) (concluding, outside the Rule 91a context, that the contested pleading exhibit "form[ed] part of the [plaintiff's] claim" and so was "incorporated into the pleadings").

But despite this broad awareness of Rule 91a.6, few if any opinions tackle the discrete issue of *how to decide* whether a particular pleading exhibit

5

may have had an attractive opportunity to clarify what Rule 91a requires courts to consider when ruling on such a motion to dismiss. The question matters because it affects the judiciary's ability "to dismiss meritless cases before the parties engage in costly discovery." *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 656 (Tex. 2020). We could (and not infrequently do) grant review despite a comparative lack of scrutiny from other courts. But here, even if we conclude that the court below erred as to the Rule 91a issue, that conclusion by itself would not affect the judgment, which is independently supported by each of the three grounds reached by the court of appeals.

Of course, while we also frequently review cases with multiple indispensable issues, a petition bets against itself in a court of discretionary review with each additional issue that it presents. When this Court grants review in multi-issue cases, it is often when, as here, the petitioner has no choice. Connemara *had* to challenge each ground that could independently sustain the judgment below. If it did not, it would not have actually challenged the judgment at all. And for petitions that properly target the lower court's judgment while raising multiple issues, the indispensable minimum is that at least one issue be important to the jurisprudence of the State, which is what brings a case within our jurisdiction. *See* Tex. Gov't Code § 22.001(a). Sometimes *several* issues may independently warrant the Court's review under that standard. In other cases, the key issue may be sufficiently important to merit taking a case that requires

_____

"constitut[es], in whole or in part, the claim sued on," Tex. R. Civ. P. 59, in the Rule 91a context. Before this Court lays out the procedure that courts should use when making that determination, we would benefit from further consideration of that specific question by the courts of appeals.

6

us to resolve issues that, if raised by themselves, would not warrant plenary review—but only if doing so would not clearly impede our ability to resolve the lead issue that matters to the larger jurisprudence. Sometimes satellite issues pose no problem at all, such as when their resolution may be sufficiently obvious that we could affirm or reverse on those grounds without much, or even any, discussion.

In my judgment, the Rule 91a question present in this case is the one that independently warrants our review. The other issues would not stop us from doing so, but at least one of them would benefit from more percolation in the courts of appeals (just as the lead issue itself would). Those additional questions, moreover, are not self-evidently simple; if we could be sure that we could affirm or reverse on those issues without comment, and thus focus exclusively on the lead issue, whether to grant review would be a closer call. But as it stands, and after detailed consideration over a lengthy period, I concur in the denial of the petition, with these additional comments to emphasize my expectation that the Court will, in time, properly take a case that implicates the lead issue here.

## A

Connemara argues that the court of appeals should have considered Longhorn Creek's pleading exhibits, which show that its notices strictly complied with § 5.203(c)—namely, that the notices provide the legal description of the property in 14-point boldface type. The rule states that, in deciding whether to grant a motion to dismiss, the trial court

> may not consider evidence . . . and *must decide* the motion based solely on the pleading of the cause of action, *together with* any pleading exhibits permitted by Rule 59.

Tex. R. Civ. P. 91a.6 (emphasis added). Rule 59, in turn, provides that

7

[n]otes, accounts, bonds, mortgages, records, and all other written instruments, *constituting, in whole or in part, the claim sued on*, or the matter set up in defense, may be made a part of the pleadings . . . and shall be deemed a part thereof for all purposes. . . . No other instrument of writing shall be made an exhibit in the pleading.

*Id*. R. 59 (emphasis added).

Thus, the trial court "must" consider pleading exhibits, *id*. R. 91a.6, that "constitut[e], in whole or in part, the claim sued on," *id*. R. 59. If the exhibits satisfy this requirement, they "shall be deemed a part [of the pleadings] *for all purposes*," *id*. (emphasis added), and if they are not, they should not "be made an exhibit in the pleading" in the first place, *id*.

Connemara argues that the notices that Longhorn Creek attached to its amended petition constitute, at least "in part, the claim sued on." *See id*. As Longhorn Creek repeatedly recognizes, its "claim is that it is not obligated to pay the Private Transfer Fee." And Connemara emphasizes that *part* of that claim—indeed, Longhorn Creek's lead theory—is that the private transfer fee is void because Connemara's notices failed to strictly comply with § 5.203(c)'s typographical and legal-description requirements. Accordingly, Connemara says, Rule 91a *required* the trial court (and thus the court of appeals) to decide Connemara's motion to dismiss based on the amended petition, treating its appended notices as part of that pleading.

The court of appeals disagreed. It "consider[ed] *only* Longhorn Creek's [amended petition]," 686 S.W.3d at 429 (emphasis added), to the exclusion of the exhibits, reasoning that the notices "may be important future evidence for some of Longhorn Creek's allegations" but "cannot be said to constitute the claim sued on," *id*. at 428. Pleading exhibits, the court said, are "dispositive of nothing without more." *Id*. at 427

8

(quoting *Davis v. Homeowners of Am. Ins. Co.*, No. 05-21-00092-CV, 2023 WL 3735115, at \*5 n.6 (Tex. App.—Dallas May 31, 2023, no pet.)). And because the notices apparently did not "imbue or augment the allegations" within Longhorn Creek's amended petition, the notices were not pleading exhibits that the court could consider in ruling on the Rule 91a motion to dismiss. *See id.* at 427–28 (quoting *Davis*, 2023 WL 3735115, at \*5 n.6).

The court of appeals' brief discussion relied on a 111-year-old precedent of this Court. *See id.* at 428–29 (citing *City of Paris v. Bray*, 175 S.W. 432, 433 (Tex. 1915)). This Court has never once cited that case. But it remains a precedent and, when applicable, binds the lower courts. (Notably, from 1943 until this case, none of the courts of appeals has cited *City of Paris*, either.) Even so, I doubt that *City of Paris* is helpful to the conclusion reached by the court of appeals here.

In *City of Paris*, the Court held that a particular notice attached as an exhibit to a petition did not "constitute, in whole or in part, the cause of action sued on." 175 S.W. at 433. There, the City had sued the Brays "to recover the amount of a paving assessment," but the paving assessment itself was valid only if the City gave "notice." *Id.* at 432. A related ordinance permitted the City to publish the notice in the city paper so long as it recited the name of each affected property owner—*i.e.*, Mr. and Mrs. Bray. *Id.* at 432–33. Though the City alleged in its petition that it "duly" published the notice, the notice that it attached as an exhibit did not recite Mrs. Bray as a property owner. *Id.* at 433. The court of civil appeals held that it "affirmatively appeared from the petition that Mrs. Bray had no notice of the assessment," so it was "void as to her." *Id.* This

9

Court reversed, holding that the pleading exhibit was simply "*evidence* in support of [the] allegations" that the notice "was duly given [to Mrs. Bray]." *Id.* (emphasis added). The "cause of action," we said, was "constituted by the debt"—*not* the validity of the publication itself. *See id.* Thus, the notice "could not be considered in testing the sufficiency of the pleading," and "the petition itself was sufficient on general demurrer." *Id.*

To be clear, I agree that, despite its antiquity and apparent desuetude, *City of Paris* is on point. Key to our decision was what Rule 59 now focuses on: whether the City's pleading exhibit "constitute[d], in whole or in part, the cause of action sued on." *Id.* And key to the court of appeals' decision in the present case was whether Longhorn Creek's pleading exhibits "constitut[e], in whole or in part, the claim sued on." 686 S.W.3d at 427 (citing Tex. R. Civ. P. 59, 91a.6). So I can see why the court of appeals found it persuasive despite no party's having discussed or cited it in the briefing.

But it seems highly likely to me that the court of appeals misunderstood *City of Paris*'s import. For example, Longhorn Creek's "claim sued on" is at least arguably "constitut[ed]" by the validity of the private transfer fee, which under § 5.203(c) hinges (in part) on the validity of the notices. Whether Connemara complied with the statute's demands to the letter is the whole ball game. With this understanding, the court of appeals was obligated to determine whether the notices Longhorn Creek attached to its amended petition complied with the statutory requirements. If it could not resolve the matter based on the notices, that would be one thing. But *ignoring* the pleading exhibits, which could potentially refute the pleading's allegations (indeed, its primary theory of

10

the case) as a matter of law, would be impermissible on this understanding of the rules.

I do not see *City of Paris* as posing an obvious obstacle to that understanding. In a case like that, a plaintiff seeks to recover *the amount* of an assessment—to enforce the debt allegedly owed by the defendant. The plaintiff's cause of action, therefore, "has its origin in the provisions of law governing the levy of the assessment." *City of Paris*, 175 S.W. at 433. True, as this Court put it in 1915, the particular assessment would be "invalid" under the law "unless the owner of the property affected by it is given notice . . . before it is imposed against him." *Id.* But, we continued,

> any document used [to provide the affected property owner notice] was no more a written instrument constituting a foundation for the cause of action than were the charter provisions and ordinances of the city relating to such assessments, and which embodied that requirement as a part of the procedure essential to a valid levy.

*Id.* In other words, whether (or not) Mrs. Bray received the requisite notice did not rise or fall with the City's botched publication. *See id.* The Court was clearly loath then, as I probably would be now, to let Mrs. Bray escape the debts she incurred for "paving done *in front of* [her] property" by reason that the City did not comply with every jot and tittle of just one mechanism for providing the requisite notice. *See id.* at 432–33 (emphasis added).

Let us imagine instead that Mrs. Bray's suit arose as an action seeking a declaration (a procedural device available now, if not to the Mrs. Bray of 1915) that the assessment was invalid. Suppose that the *sole* basis for the demanded declaration is that the notice failed to recite the plaintiff's name as an affected property owner. And suppose further that a law provides that the *only* possible way for the City to provide an

11

affected property owner with notice is via a newspaper publication that lists the affected property owners by name. In support of her allegations, this hypothetical Mrs. Bray attaches the notice as a pleading exhibit. That notice would, I think, "constitute, in whole or in part, the cause of action sued on," *id.* at 433, because it was the document that made up and formed the hypothetical declaratory-judgment claim. And if the City's Rule 91a motion to dismiss (also not available in 1915) argued that the suit lacked a basis in fact or law because the notice *did* recite her name, the court presumably would need to review the notice in ruling on the motion (and in reviewing a lower court's decision disposing of it).

All this to say, it is far from clear that the court of appeals was right to treat Longhorn Creek's declaratory-judgment action as anything like the City's suit to recover the amount of the paving assessment from the Brays. And if it was not right to do so, then in weighing whether to consider the notices attached to Longhorn Creek's petition, the court of appeals presumably should have wrestled with Longhorn Creek's *actual* "claim sued on." *See* Tex. R. Civ. P. 59. Once it confirmed that Longhorn Creek sought a declaration to void the private transfer fee, the court then should have considered whether the notices Longhorn Creek attached as pleading exhibits "constitut[ed]" that claim—"in whole or *in part.*" *See id.* (emphasis added). Because part of the claim itself was that the notices themselves failed to comply with § 5.203(c), thereby voiding the private transfer fee, it was necessary for the court to consider them.

Instead, to justify an unduly narrow reading of Rules 91a and 59, the court of appeals roused from its 81-year slumber a case that was born during Woodrow Wilson's first term and made its last public appearance

12

during Franklin D. Roosevelt's third term. If my suspicion is correct, the court of appeals not only misread *City of Paris* but also undermined the judiciary's ability "to dismiss meritless cases before the parties engage in costly discovery." *Bethel*, 595 S.W.3d at 656. (Costly discovery was *also* not really a thing in 1915.) Indeed, it strikes me that "to obtain a just, fair, equitable and impartial adjudication" of these parties' rights "under established principles of substantive law," both courts and parties should welcome constructions of our procedural rules that trim the fat from the litigation process, as our rules demand. *See* Tex. R. Civ. P. 1.

Trimming the fat here was as easy as looking to see if the allegations were consistent with their source material—and more specifically, whether the notices *themselves* complied with the requirements of the statute. If they did, then the allegations made by Longhorn Creek—*i.e.*, that the notices did not provide a legal description of the property in 14-point boldface type—simply could not be true. In such a situation, the allegations do not trump their source material, for "[i]f a pleading attaches a legal instrument that forms the basis of the plaintiff's claims, the *instrument itself* controls over an *allegation* about what the instrument says." *Tex. Tech Univ. Sys. v. Martinez*, 691 S.W.3d 415, 433 (Tex. 2024) (Young, J., dissenting) (emphasis added).

But I commit myself to no view. My doubts might be allayed. Maybe Rule 91a *does* preclude courts from considering pleading exhibits like the ones at issue here. Aggravating the issue further is that this Court has had no occasion to delineate whether a particular pleading exhibit "constitut[es] . . . the claim sued on," Tex. R. Civ. P. 59—beyond *City of Paris*, that is, *see* 175 S.W. at 433; *see also Bethel*, 595 S.W.3d at

13

654 (noting that the class of pleading exhibits a court must consider when ruling on a Rule 91a motion to dismiss is "narrow").

Ideally, therefore, more courts of appeals will weigh in on the question and provide their independent judgments. They should certainly not reflexively defer to the Fifth Court's decision on this issue. They should follow it if and only if they find it persuasive. The court of appeals here, in fact, doubled down on its own prior precedent, noting that courts "may" consider pleading exhibits that "merely imbue or augment the allegations of the pleadings to which they are attached." 686 S.W.3d at 427 (quoting *Davis*, 2023 WL 3735115, at *5 n.6). To the court, a pleading exhibit has "no talismanic quality" and is "dispositive of nothing without more." *Id.* (quoting *Davis*, 2023 WL 3735115, at *5 n.6).

Is that view truly consistent with Rule 91a? Is it even consistent with the court of appeals' own understanding that Rule 91a dismissal is appropriate where "the plaintiff has pleaded itself out of court"? *See id.* at 426 (quoting *In re Shire PLC*, 633 S.W.3d 1, 18 (Tex. App.—Texarkana 2021, orig. proceeding). Could it really be that a pleading exhibit that explicitly states the opposite of what the plaintiff's pleading alleges is not "dispositive" of the plaintiff's case under *any* circumstances? How do Connemara's notices, which are a matter of public record, not potentially have "talismanic quality" here, where Connemara asserts that they do "contain[] the required legal description of the property" in "boldfaced 14-point type"? Would it not *undermine* Rule 91a for a court to give such pleading exhibits the cold shoulder? *Cf.* Tex. R. Civ. P. 1.

In any event, once further percolation of this sort occurs, this Court will likely need to address whether the lower courts are properly defining

14

the circumstances under which they must consider pleading exhibits when deciding Rule 91a motions to dismiss. The answers to these questions are undoubtedly "important to the jurisprudence of the state." *See* Tex. Gov't Code § 22.001(a). Indeed, as *Bethel* put it, "[f]orcing parties to conduct discovery when the claimant's allegations"—and the claimant's pleading exhibits—"conclusively establish" that the defendant is entitled to dismissal as a matter of law "would be a significant waste of state and private resources." 595 S.W.3d at 656. Such waste would flout the legislature's decision to afford litigants a unique procedural mechanism to escape meritless claims brought by adversaries who have pleaded themselves out of court. *See King St. Patriots v. Tex. Dem. Party*, 521 S.W.3d 729, 739 (Tex. 2017) (noting that "claims lacking genuine merit may be resolved expeditiously under Rule 91a's dismissal procedures").

At the proper time and in a proper case, therefore, this Court should clarify what must be considered when ruling on a Rule 91a motion to dismiss.

**B**

But this is not the right case. Even setting aside the lack of percolation about the Rule 91a issue, that issue is not all that this petition raises. As I have described, Longhorn Creek also seeks a declaration that the private transfer fee is void because Connemara waived it and because it does not touch and concern the land. To determine whether the trial court properly dismissed Longhorn Creek's suit, we would have to determine whether these two independent theories for declaratory judgment have a basis in law, given the court of appeals' resolution. The circumstances further militate against doing so.

15

Start with the easier issue: Longhorn Creek's waiver theory. After Connemara burdened hundreds of acres of land with a private transfer fee, buyers who purchase any portion of that land must pay Connemara 1% of the purchase price. Rather than collecting that private transfer fee from certain third-party buyers, Connemara released them from the obligation and instead collected a one-time payment in lieu of future private transfer fees. Longhorn Creek says that "based on the intentional selective release of parties from the Private Transfer Fee obligation, [Connemara] ha[s] intentionally waived [its] right to collect Private Transfer Fees" altogether.

I doubt this conduct is "unequivocally inconsistent with claiming a known right." *Van Indep. Sch. Dist. v. McCarthy*, 165 S.W.3d 351, 353 (Tex. 2005); *see also Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 485 (Tex. 2017) ("Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be *clearly demonstrated* by the surrounding facts and circumstances." (emphasis added) (quoting *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003))). Far from "unequivocally inconsistent," Connemara's conduct in releasing third parties is plainly consistent with its *right* to collect the private transfer fee from buyers of the burdened property. Indeed, that it required certain third parties to make a payment *at all* meant that it continued to claim its "known right" to collect the fee. We could likely resolve this case- and record-specific question contrary to the court of appeals. But it is not clearly important to the jurisprudence of the State.

Longhorn Creek's common-law theory, on the other hand, is not so straightforward. Connemara asks us to reject Longhorn Creek's

16

"suggestion that the private transfer fee amounts to a common law covenant running with the land that must 'touch and concern' the land." Specifically, it argues that Property Code § 5.202's "plain language" shows that "private transfer fees are not required to benefit the property" and apparently concedes that the common law would otherwise require the private transfer fee to do so. All this means that, according to Connemara, the Property Code "supersede[s] those common law requirements." But the court of appeals disagreed, reasoning that Connemara "point[ed] to nothing in settled law providing that [Property Code §§ 5.201–.207] directly conflict[] with the common law principles raised by Longhorn Creek." 686 S.W.3d at 429 (footnote omitted).

This Court has said that "[a]brogating common-law claims is disfavored and requires a clear repugnance between the common law and statutory causes of action." *Cash Am. Int'l Inc. v. Bennett*, 35 S.W.3d 12, 16 (Tex. 2000) (internal quotation marks omitted); *see also United States v. Texas*, 507 U.S. 529, 534 (1993) ("In order to abrogate a common-law principle, the statute must speak directly to the question addressed by the common law." (internal quotation marks omitted)). What that means in practice, and as applied here, is less clear—and yet neither Connemara nor Longhorn Creek nor even the court of appeals spent more than a few paragraphs discussing this distinct issue. None identified any other court that has considered the intersection between private transfer fees and common-law property principles. It is not clear how or if resolving the question would affect *other* common-law claims.

This Court's potential answer to whether private transfer fees must "touch and concern" the land unironically touches and concerns *at least*

17

every private transfer fee that survived the legislature's 2011 revisions to the Property Code. Rather than "deprive [the] lower courts of the chance to weigh in on [this] important question[]," particularly considering the potential for it to affect other questions in other areas of the law, I believe we "would greatly benefit from the[ir] considered views." *United States v. Texas*, 599 U.S. 670, 694, 702 (2023) (Gorsuch, J., concurring). It may turn out that this court of appeals got it right—or not. The point is that Texas law will be better served if this Court considers the issue only after more courts and counsel have done so first. The adversarial process's collective diligence will help this Court generate a well-informed decision that provides clarity, rather than more confusion, in the law.

And, of course, if the issue never does come to us again, it means that the private-transfer-fee issue will have turned out not to be significant to the jurisprudence after all. If so, it will have been wise for us to avoid making a precedent now that would not turn out to be useful for this area of law but might (like the long-dormant *City of Paris*) turn out to inadvertently cause trouble somewhere else.

*   *   *

For the foregoing reasons, I concur in the denial of the petition for review. I await a better opportunity to put a finer point on what a court must consider when ruling on a Rule 91a motion to dismiss.

Evan A. Young
Justice

**OPINION FILED:** January 23, 2026

18